## Louisville & Nashville Railroad Company v. Chambers.

(Decided September 28, 1915.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, No. 4).

Negligence—Evidence.—When the evidence is equally consistent with the existence or non-existence of negligence causing injury to the plaintiff, he must fail.

HELM & HELM and BENJAMIN D. WARFIELD and C. H.

MOORMAN for appellant.
S. L. TRUSTY for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

This is a companion case to Louisville & Nashville Railroad Company v. Mrs. Mahala Chambers, decided September 23, 1915, in which the circumstances relative to the accident are fully stated. Appellee herein is the husband of the appellee in that case, and they were occupying the same bed at the time the freight car crashed into the fence in front of their residence.

While she went to the east, over the foot of the bed, he awoke to find his head entangled in the rods at the head of the bed, as the result of which, after extricating himself, he found a "little knot" on the side of his head, with reference to which "little knot," he said, "I never had it before; I must have got it there."

This, together with certain spinal defects, discovered by the medical experts who explored his anatomy therefor, formed the basis of a verdict and judgment in his favor in the sum of three hundred dollars against the railroad company, which seeks relief by prayer for the granting of an appeal and for the reversal of the judgment.

Despite his injuries, appellee was able to continue at his work at the Avery Plow manufactory without missing

a single working day on account of said injuries, for some five or six months and possibly longer, immediately after the occurrence mentioned, and he was still working there at the time of the trial.

He testified that when the crash came, his wife screamed and went over the foot of the bed, and he went to jump up right quick and struck the bed and found that he was fastened in the rods at the head of the bed; that "I found out where I was and I lowered my head; I knew where the big place was and I pulled my head out." The rods were so shaped as to be nearer together at the bottom than higher up, and he extricated himself by raising his head about two feet above the pillow where the space between the rods was wide enough to permit to withdraw his head. How or when he got in the position in which he found himself when he tried to get up, he could not tell.

1. There has been recognized in this state the rule that where a passenger, through the negligence of the carrier, is placed in a position of seeming peril, and acting upon a natural impulse seeks safety in that course which an ordinarily prudent person situated in a like or similar position would reasonably have been expected to take, he may recover for the injuries thereby sustained. Big Sandy & C. R. Co. v. Blankenship, 118 S. W., 315; see also, Davis v. Paducah R. & L. Co., 113 Ky., 267; 68 S. W., 140; 24 R., 135.

The duty of a carrier to its passengers is of the highest degree known to the law. But the rule above mentioned has also been applied where the duty owed was that of only ordinary care. See Illinois Central R. R. v. Wilkins, 149 Ky., 35; 147 S. W., 759; and see Millers Creek R. Co. v. Barnett, 159 Ky., 344; 167 S. W., 402 (a master and servant case), in which attention is directed to the requirement that there must have been a reasonable appearance of peril and of threatened injury therefrom, rendering reasonably and apparently necessary, a choice of means of extrication from the peril, real or apparent, and action upon that choice.

But, in the instant case, there was no apparent or seeming peril, rendering reasonably and apparently necessary a choice of means of extrication therefrom and action upon that choice; nor is it made to appear that appellee made any such choice, or acted thereupon. True, there came in the night time a loud crash at the front of

his residence and a scream from his wife; but the noise of that crash and that scream were all that could possibly have come to the appellee's senses. He saw no seeming peril; he is not here insisting that he sought to avert any seemingly impending danger and was thereby injured; he only knows that he awoke in the night, to find his neck entwined in the cool embrace of the rods at the head of his bed. How or when he got in that position he does not pretend to know. For aught the record shows, he may have been nestling in that snug caress for some time before the crash of the car or the scream of his wife aroused him to the stern realities of his peculiar situation; or he may have been awakened by the crash and, while in a semi-conscious condition, have become so entangled; or he may have been awakened by the scream of his wife, and got in that position before reaching full consciousness.

So, even if it be conceded that his injuries are not too remote to form the basis of a recovery, if in point of fact they resulted from action on the part of appellee induced by fright caused by the crash of the car, while he was in a semi-conscious condition, still it is not shown that he acted under any such inducement. We are left to theorize as to how he came to be in the position in which he found himself when he awoke, and, therefore, to theorize as to how he received the injuries of which he complains.

In Caldwell's Admr. v. C. & O., 155 Ky., 609; 160 S. W., 158, this court said: "The most that can be said of the evidence is that it presents several states of case upon which one may theorize as to the cause of the decedent's death, and any one of which is as plausible as the other and all arising upon mere conjecture. A recovery cannot be had on speculation as to how the death complained of occurred, nor will it be presumed in such case that the appellees were guilty of actionable negligence. If the injury may as reasonably be attributed to a cause that will excuse them as to a cause that will subject them to liability, then the well-settled rule is that a recovery cannot be had."

That rule should be applied in the case at bar, and the circuit court should have directed a verdict for the defendant.

Appellant's prayer for an appeal is granted, and the judgment is reversed.