# Louisville & Nashville Railroad Company v. Scott's Administrator.

(Decided March 21, 1919.)

## Appeal from Henry Circuit Court.

1. Trial—Peremptory Instruction.—A peremptory instruction should not be given except where, taking all the evidence together, and every reasonable inference to be drawn therefrom, the party against whom it is offered has failed to make out a case. And where there is contradiction in the testimony upon any particular issue, it should be submitted to the jury under appropriate instructions.

2. Railroads—Crossings—Care to be Exercised in Approaching.—If where a highway crosses a railroad track, on account of the physical surroundings or other obstructions, the crossing is unusually dangerous, both the traveler and the railroad company should exercise care commensurate with the danger in approaching the crossing.

3. Railroads—Crossings—Signals.—If such crossing is both dangerous and situated in a town or a populous community with an extensive amount of travel over it, the duty is imposed upon the railroad company to exercise ordinary care for the safety of those using the crossing, and if such ordinary care should call for the use of other means to warn the traveler of the approach of the train than the usual warnings and signals, it is the duty of the company to use such other means, and it is proper to submit to the jury under the circumstances whether such additional means should be used.

4. Railroads—Crossings—Speed of Trains.—If the crossing is of the character indicated, and the safety of the traveler on the highway demands it, it would be the duty of the company to operate its trains over the crossing at such reasonable rate of speed as due regard for the safety of the traveler would require. But this does not demand of it that it should run its trains at such a speed as to be able to stop the train and prevent the accident, or to afford the traveler in every case sufficient time to get off of the crossing.

5. Carriers—Action for Death of Passenger—Evidence.—Where the accident results in killing the traveler, which the railroad company admits, it is improper to admit testimony showing the character of injuries inflicted upon the deceased, and likewise it is error in actions to recover damages for injuries inflicted at crossings to permit testimony as to the speed of the train upon other days and at other places on the same day to be introduced.

6. Negligence—Care Required in Use of Automobiles—Stop, Look and Listen Doctrine.—The law does not demand any higher duty of one riding in an automobile or an automobile truck when approaching a railroad crossing than it requires of one traveling in any other way, and since the rule of "stop, look and listen"

does not apply to the ordinary traveler in this state, it will not apply to one traveling in an automobile or automobile truck.

7. Negligence—Automobile—Care in Use of.—One riding in an automobile truck who does not have charge of the machine, and who is not connected in any way with the business of the driver, will not be responsible for the negligence of the driver, but only for that of himself, if any, and if he is not negligent he may recover for any injuries which he may sustain unless the negligence of the driver was the sole cause of the accident.

8. Negligence—Crossing Railroad Tracks.—It is not negligence per se for a telegraph operator in the employ of a railroad company to attempt to cross the company's track over a public highway at the time a train is due to arrive, but the fact is competent evidence as bearing upon his negligence in attempting to go over the crossing.

MOODY & BARBOUR and BENJAMIN D. WARFIELD for appellant.

SCOTT & HAMILTON, W. O. JACKSON and KIRBY BOURNE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This suit was filed to recover damages for the alleged negligent killing of Oscar Scott by the appellant and defendant below, Louisville & Nashville Railroad Company, on December 5, 1916. The accident resulting in decedent's death occurred at a grade crossing in the town of Campbellsburg, Henry county, at about 9:33 a. m., by a fast passenger train going east from Louisville to Cincinnati colliding with an automobile truck in which the deceased was riding. The truck which weighed nine tons was being driven by Charles Staebler, who was hauling crushed rock to be put upon the Campbellsburg and New Castle pike, a short distance from the former town, and it had on it at the time a load weighing five tons. In general terms the negligence alleged consisted in a failure to give proper warning of the approach of the train to the crossing; that the crossing was in an incorporated town, a densely populated community, and that a great number of people crossed it daily, making it extensively used, and that it was, because of the topography of the ground, an exceptionally dangerous crossing; that because of these facts ordinary care on the part of the defendant required that it should not only give the usual signals of the approach of its train to the crossing, but that ordinary care for the trav-

cler required it to adopt some other method of warning him by maintaining a flagman, a gate, an automatic bell, or some other contrivance which ordinary prudence might dictate.

The answer contained a denial of the allegations of the petition and a plea of contributory negligence, which was denied by a reply, and upon trial the jury returned a verdict in favor of plaintiff for the sum of $15,000.00, and complaining of it the defendant prosecutes this appeal.

Many alleged errors are relied on for a reversal. For us to undertake to consider in detail each of them would not only entail a heavy tax upon our time, but would carry this opinion far beyond due limits. Condensely stated, it is urged that the peremptory instruction offered by defendant should have been given, but that if mistaken in this, the court improperly instructed the jury; that the court, over the objections of the defendant, permitted incompetent testimony to be introduced, and that the verdict is excessive.

The right to the peremptory instruction is insisted upon because it is claimed that no negligence is shown on the part of defendant, and that the testimony conclusively shows contributory negligence on the part of deceased. A disposal of these contentions calls for a brief statement of the facts.

Campbellsburg is an incorporated town with municipal officers and has a population, according to the testimony, of between three and four hundred people, with the contiguous territory to the corporate limits quite thickly settled, especially in the direction of and beyond the crossing in question. That crossing is made by the main street in the town and seems to be the only entrance to the town from the territory lying north and east of it. It is shown without contradiction that from three to five hundred people cross over the crossing daily. Between the station whistling post and the town there are two other crossings, one of which is an overhead one, and the other, at grade and is about 2,400 feet west of the crossing where the accident occurred.

The depot is 920 feet west of the crossing involved, and something like half way the distance between the depot and the crossing the railroad track enters a cut which terminates practically at the crossing, and which is about eighteen or twenty feet deep. The cut is in a

curve, and the hill through which it runs obstructs the view of a train approaching from that direction until the traveler is practically upon the track, although when fifty feet away from the track a train could be seen about one hundred and forty feet from the crossing, and when within twenty-five feet of the track it could be seen about two hundred or two hundred and fifty feet from the crossing.

On this occasion the train in question was what is known as a double-header, which contained, besides the two engines, eight coaches; it was running one minute late and at a speed ranging, according to the testimony, from thirty to sixty miles per hour. Its schedule rate from Louisville to Cincinnati was thirty-three miles per hour, with a maximum if necessary of forty-five miles per hour. The employes on the train and many other witnesses testified that the train signaled for the station at the usual place, then for the grade crossing west of the depot, then for the board at the station, which, when given, was answered by another signal, and that about the time it passed the depot it gave the usual signals for the Campbellsburg and New Castle crossing; that at that time the bell was ringing and continued to ring until the crossing was reached. A number of witnesses for plaintiff testified to hearing some one or more of these signals, but say that although they were close to the track there was no signal given for the crossing in question, nor was the bell ringing when the train approached it. All the signals testified to except the one at or near the depot were too far from the crossing to comply with the statute, and possibly too far for any one behind the hill at the crossing to hear them. If there was a failure to signal for the crossing at or near the depot, it is clear that ordinary care was not exercised to give warning of the approach of the train. We therefore conclude that the insistence that a peremptory instruction should have been given because no negligence was shown on account of the failure to give warning of the train's approach can not be sustained.

The truck in which decedent was riding had been loaded from a car just west of the depot, and when it left the car it was traveling at the rate of about five miles per hour. The pike from the depot to the crossing ran practically parallel with the railroad track, which

was in plain view for about half the way, where the track, as stated, entered the cut. The space between the track after the entrance into the cut and the road over which decedent was traveling was occupied by several houses, some of which had picket fences around them, and those obstructions prevent a traveler on the pike from seeing the train after it enters the cut. The pike some distance before reaching the crossing is down grade, and when within about fifty feet of the crossing it turns so as to cross the track practically at right angles. East of the crossing the ground is level. The driver, Staebler, testified that he listened for trains on approaching the crossing; that he looked east and saw no train; that when within about fifty feet of the crossing, and again when within twenty-five feet of it he looked west and saw none, neither did he hear one from that direction, and did not discover its approach until he was upon the track. He says that the deceased also looked west at about the time he did. Twelve hundred feet east of the crossing was a semaphore which indicated, if in working order, when a train would be within the block. It was in evidence that the semaphore was in working condition on that day.

The deceased had no connection with the repairing of the pike, or the hauling of material for that purpose. He had merely gotten upon the truck on his own account for the purpose of riding out to where the pike was being repaired. He had no control over the movements or actions of the driver. At the time, and for seven years prior thereto, he was a telegraph operator in the employ of the defendant, his hours of work being from one to ten o'clock p. m. However, upon occasions, if needed, he worked in that capacity at other times in the day. From these facts it is strongly urged that deceased was guilty of contributory negligence sufficient to bar the right of his estate to recover. This contention is based upon the two grounds that under the facts he did not exercise ordinary care in approaching the crossing, and that because of his occupation he necessarily knew the schedule time of that train and should therefore have exercised increased care above that required of the ordinary traveler in approaching the crossing. But we do not agree with these contentions. According to plaintiff's testimony the deceased did what most any one else would have done, and about all that could have been done to

discover the approach of the train except to stop the machine. The "stop, look and listen" doctrine has not been adopted in this state. It is true that in this case it is strongly urged that a different rule should be ap-, plied to a traveler in an automobile from that which has heretofore been applied to other classes of travelers, and that as to the former the "stop, look and listen" doctrine should be applied.

Cases from other states, and some from inferior Federal courts, drawing the distinction contended for are referred to and relied on, but this court has in a number of cases within recent years declined to recognize or apply the distinction. One of the latest cases from this court, and in which prior ones are referred to, is that of L. & N. R. R. Co. v. Treanor's Admr., 179 Ky. 337. In addition to referring to prior cases from this court, the opinion in that case considers many others from foreign jurisdicions, including the case of N. Y. C. & H. R. Co. v. Maidment, 168 Fed. 21, 21 L. R. A. (N. S.) 794, which is much relied on here. The doctrine of that case was rejected in the Treanor case, and in summing up our final conclusions we said:

"But we do not think the fact that the automobile is capable of inflicting more harm than the ordinary vehicle is sufficient to require at crossings the application of a rule different from that applied to heavy wagons or vehicles. It is a matter of common knowledge that when a collision occurs between an automobile and an engine the result is the same as when the engine strikes a wagon, buggy or other ordinary vehicle—the occupants of the automobile or vehicle are the ones who are crippled or killed and not the passengers on the train or its employes."

Still later cases from this court hold to the same rule announced in the Treanor case. Louisville & Interurban Ry. Co. v. Schuester, 183 Ky. 504. So that whatever may be the merits or demerits of the proposition contended for as an original one, this court has taken too firm a stand to now retrace its steps, and we therefore conclude that the failure to stop the truck on the occasion in question before entering the crossing was not *per se* negligence.

We do not agree with the contention that because the deceased was an employe of the railroad company and presumptively knew of the time of the arrival of the

train which produced the injury he is for that reason alone to be charged with contributory negligence. The same employment also informed him that it was the duty of those in charge of the train to give such warnings and signals when approaching the crossing as were reasonably calculated to warn the traveler on the highway. Furthermore, he knew that upon occasions the train was not strictly on time, and he is not to be charged with the knowledge that it was measurably on time that day. But conceding that the fact of his employment gave him more accurate information as to the time of the running of the train, and therefore imposed upon him a correspondingly greater duty to discover the approach of it to the crossing, the question then under the facts was one for the determination of the jury and not one for the court itself to determine as a matter of law.

In this connection it is also insisted that the semaphore, located twelve hundred feet east of the crossing, could have been seen by the decedent, and that it indicated that a train was within the block, and that his failure to observe such indication was itself negligence. In answer to this it may be said that there is some evidence to show that decedent could not have seen the semaphore before he was in immediate danger, nor is it in proof except by inference that the semaphore on the particular occasion indicated that the train was within the block. Furthermore, the position of the semaphore would not indicate that a train was approaching the crossing. The only fact which the semaphore would positively establish was that a train was in the block, but whether it was running and if so in what direction, or upon what track, or whether it was standing still, would not be indicated. So that if it were in proof that the decedent saw and observed the indication made by the semaphore, we think it was then a question for the jury to say whether in the exercise of ordinary care for his own safety he should have stopped the truck before entering upon the track.

Some of the criticisms of the instructions submitted to the jury have been disposed of by what we have already said. The chief remaining ones are, that the court should not have submitted to the jury the issue of the crossing being an exceptionally dangerous one, and thereby impose upon the defendant the duty of increased

care in approaching it with its train; that the instructions were faulty in submitting to the jury the issue as to whether the travel over the crossing was so extensive and the crossing itself so dangerous, coupled with the further fact of its being in an incorporated town, as to require of the defendant in the exercise of ordinary care to have a watchman located there, or to take other steps calculated to warn the traveler. This court has consistently held, without exception so far as we are aware, that where a grade crossing was exceptionally dangerous, regardless of what produced it, it is the duty of those in charge of trains not only to give the required statutory signals for the crossing, but that if ordinary care for the safety of the traveler on the highway required it, the company should employ such other means to warn travelers of the approach of the train as may be considered necessary by prudent persons in operating trains. Many cases could be cited in substantiation of this proposition, but the latest from this court are L. & N. R. R. Co. v. Treanor's Admr., *supra,* and C., St. Louis & N. O. R. R. Co. v. Armstrong's Admr., 168 Ky. 107. Other cases from this court are referred to in the opinions in those two. From the same source it will be found that the prevailing rule in this state is that when the crossing is in an incorporated town and in a thickly populated community and extensively used, in addition to the requisite warnings and signals the company should operate its trains at a reasonable rate of speed and afford the traveler at least some opportunity to get out of its way and make his escape. This does not mean, however, that the speed must be such that those in charge of the train could instantly stop it. It only means that the speed at such places must not be reckless or so dangerously fast as to put it out of the power of either the traveler or the operators of the train to do anything to prevent the accident after the peril is discovered. The cases referred to and the facts of this case amply justify this phase of the instructions complained of.

The case of L. & N. R. R. Co. v. Molloy's Admrx., 122 Ky. 219, relied on does not announce a different rule nor anything in conflict with the cases, *supra.* In that case there was no testimony as to the density of the population nor as to the extensive use of the crossing, and the court held that the same rule would apply to it as applies to an ordinary crossing in the country at

which the speed of the train is no element of negligence. The instruction complained of, after submitting to the jury the signals which the operators of the train should give in approaching the crossing, says:

"Or if the jury believe from the evidence that this crossing was in a populous community on a much traveled thoroughfare, and because of its location and surroundings unusually dangerous to travelers, and that the sounding of the whistle or ringing of the bell, as directed above, was not sufficient to give reasonable notice of the approach of the trains at said crossing, and that this fact was known to the defendant, or by the exercise of ordinary care could have been known to it, then it was the further duty of the defendant and its servants in charge of the train to use such other means to prevent injury to travelers at said crossing as in the exercise of a reasonable judgment might be considered necessary by ordinarily prudent persons operating a train."

Serious complaint is made of this, but in doing so counsel appear to overlook the rule first announced by this court in the case of N. N. & M. V. R. R. Co. v. Stuart's Admr., 99 Ky. 496, which has been followed by the cases of C. N. O. & T. P. Ry. Co. v. Champ, 31 Ky. Law Rep. 1054, and Southern Railway in Kentucky v. Thacker's Admr., 156 Ky. 483. In the Stuart case the crossing involved was near Mayfield, a populous town, and was the only way of travel for people in the country north of the town, and was constantly used by highway travelers. It was also a dangerous crossing because of the physical condition of the immediate surroundings. The court gave the jury an instruction somewhat similar to that embodied in the quotation above, and in approving it this court said:

"Under the circumstances it was the duty of the company to use more precaution to avoid injury to persons using the highway than at ordinary crossings; and, those conditions existing, it was not improper to require the company to have a flagman at the point to warn travelers of approaching trains or to adopt and use some other reasonably safe mode of warning travelers. (L. C. & L. R. Co. v. Goetz's Admr., 79 Ky. 449, 80 Ky. 103.)"

The same doctrine is approved in the other two cases referred to, and in the Champ case it was said that: "It would be perhaps more in harmony with the current of authority not to point out in an instruction the par-

ticular means to be employed by the company in exercising the degree of care required at country crossings, but rather to inform them that if on account of the dangerous character of the crossing and the amount of travel thereon, the statutory signals did not afford reasonably sufficient warning, then such other means as the evidence showed might be and were usually employed by railroads at dangerous crossings should be used, as in the exercise of a reasonable judgment might be considered necessary. (L. & N. R. R. Co. v. Lucas, 30 Ky. Law Rep. 359.)''

The instruction under consideration submitted to the jury whether the crossing in question was of that exceptionally dangerous character and nature which due care on the part of the company would require other precautionary methods than the usual signals and warnings, and if so, left it to the jury to say what additional precautions ordinary care would dictate. This is in strict conformity with the rule laid down in the cases referred to, and we do not think this criticism of the instruction is meritorious.

It is insisted that the instruction as worded did not impose upon decedent the reciprocal duty of exercising increased care if the crossing was a dangerous one, although imposing such increased care upon the defendant. The instruction in this regard is substantially a copy of the one upon the same point given in the case of L. & N. R. R. Co. v. Lucas's Admr., 30 Ky. Law Rep., 359, and is practically the same as the instruction given in the case of L. & N. R. R. Co. v. Locker's Admr., 182 Ky. 578, submitting the reciprocal duties of the railroad company and the traveler on the highway at exceptionally dangerous crossings. In the Locker case, in answering the same objection that is here made, the court held that while the instruction did not say in express terms that the traveler should exercise care commensurate with the danger (which no doubt would have been the better practice), the difference in expression was one of form and not of substance, and that if it was technically an error to fail to so expressly instruct the jury it was not a substantial or prejudicial one.

The instruction presenting the reciprocal duties of the traveler and the company at exceptionally dangerous grade crossings, in the case of L. & N. R. R. Co. v. Park's Admr., 154 Ky. 269, was in substance the same as the one

given here. In that case the instruction was copied from the Lucas case, *supra,* and it was held that while technically incorrect, it substantially presented to the jury the duties imposed upon the traveler in approaching a dangerous crossing. The court said, however, that "the better plan would have been to cast upon decedent (by an instruction) in terms the same degree of care which was imposed upon appellant in approaching the crossing."

Under these authorities we would not be authorized to reverse the judgment for the error complained of, but inasmuch as a reversal will be ordered, we think the court upon another trial should give the jury instruction "A," offered by defendant, covering the point under consideration. That instruction is substantially the same as the one given and approved in the Treanor case, *supra*

Instruction No. 5 complained of dealt with the question of the liability of the deceased for the negligence of the driver of the truck and said to the jury in subsance that the negligence of the driver could not be imputed to the deceased but relieved defendant if such negligence was the sole cause of the accident, which was tantamount to saying that defendant was not liable if it was not guilty of any negligence. The instruction furthermore told the jury to find for defendant if it believed from the evidence that the deceased, independent of any acts of the driver, was himself guilty of negligence contributing to his death. We think this rule conforms to the one laid down by this court in the cases of Paducah Traction Co. v. Sine, 33 Ky. Law Rep, 792, and Louisville Railway Co. v. McCarthy, 129 Ky. 814. There is nothing in the Molloy case, *supra,* militating against this rule, since in that case there was testimony that deceased and the driver saw the approach of the train and attempted to cross in front of it.

Much alleged incompetent evidence is complained of. Counsel for plaintiff was permitted to ask the engineer of the second engine attached to the train this question: "Mr. Swift, at what speed would you have to operate your train, this train, at this crossing so as to give persons an opportunity going over the crossing and get off of the crossing or out of the way, before your train struck him?" The question was objected to, the objections overruled and the witness permitted to answer by saying: "Have to come almost to a stop, before we got over

the crossing.'' The engineer in charge of the front engine was, over the objections and exceptions of the defendant; asked this question: ''At this particular crossing, where you struck this truck, on the sixth of December, Mr. Hefferman, at what speed would you have to operate your train per hour so as to have your train under such control as that persons could get out of the truck, get off of the track, if after it came in view?'' His answer was: ''I should think that they could have got off with the speed I was running.'' There can be no doubt but that these questions and answers were highly prejudicial. We have heretofore in this opinion attempted to define the purpose of the limitations upon the speed of a train at this character of crossing. The requirement as to the speed of a train at such crossings does not go to the extent of having the train under such control ''as that persons could get out of the truck, get off of the track, after it came into view.'' To so hold would place an unreasonable restraint upon the speed of trains and would make railroad companies guarantors and insurers of the safety of everybody who used a grade crossing. This would not only exact too stringent regulations of the operation of trains, but it would destroy rapid transit which the necessities of commerce and travel demand of railroad companies.

In the case of L. & N. R. R. Co. v. Miller, 134 Ky. 716, an instruction as construed by this court required the company to operate its trains at the character of crossing under consideration with such speed as that they could be stopped before any injury was inflicted, and this court in holding the instruction erroneous said ''This goes too far. The company is only required to exercise ordinary care at such places. . . . To make it liable in all cases where it fails to keep such lookout or to run at such speed as to stop in cases of necessity before injury has been inflicted would be practically to make it an insurer at such places.'' We regard this as sound doctrine. For if the speed of the train is such that it could be slackened in time to afford an opportunity for the traveler to make an effort to avoid a collision and thereby give him a chance to escape, the rule with reference to speed at such crossings will be fully complied with.

In this case the jury, among other things, were told by instruction No. 1 ''That it was the duty of the agents

in charge of defendant's passenger train to use ordinary care to prevent collisions with and injuries to persons traveling on the road . . . by running at such a rate of speed as was reasonably consistent with the safety of persons traveling said road and using said crossing." The rate of speed sought to be and which was elicited by the questions and answers to which we have referred might well have been and no doubt was considered by the jury to be "reasonably consistent with the safety of persons traveling said road and using said crossing," and it was possibly thereby induced to return its verdict under an entirely false theory of the law with reference to the speed of the train in approaching such crossings.

Other objections are urged, among which are that a physician was permitted to tell the extent of the physical injuries inflicted upon the deceased; that other witnesses were permitted to testify as to the speed of this particular train on other occasions as compared with its speed on the fatal day, and to testify to its speed at other places on the same day. We think such testimony should not have been admitted, and upon another trial the court will exclude it, if offered and objected to. Still other objections are made, but we do not consider them of sufficient materiality to deserve our consideration.

Serious complaint is made that the verdict is excessive, but in view of the fact that there must be another trial, we will refrain from expressing an opinion upon this point.

Wherefore, for the errors indicated, the judgment is reversed, with directions to set aside the verdict and grant a new trial, and for proceedings consistent with this opinion.