## Consolidated Coach Corporation v. Hopkins' Administrator.

(Decided January 30, 1931.)

(As Modified on Denial of Rehearing, April 21, 1931.)

THOMAS & BELL, JOHN S. MILLIKEN, and R. W. KEENON for appellant.

G. D. MILLIKEN and C. E. EVANS for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The appellant, hereinafter called the bus company, seeks by this appeal to reverse a judgment for $6,000 recovered against it by Christine Hopkins' administrator, for the alleged negligent killing of her. In the latter part of the afternoon of October 17, 1928, Miss Hopkins and three others were returning to her home from some

point out the Vance's Mill road, hereinafter called the lane, to which they had gone. This lane leads from the west into the Bowling Green and Franklin intercounty seat highway, hereinafter called the highway, at a point 852 feet south of a place sometimes referred to as "Salmons" and sometimes as "Cartwright's Store." In order to avoid confusion, we shall refer to it as Cartwright's Store.

As the Ford sedan in which Miss Hopkins and her companions were traveling came into this highway from the west and turned or started to turn north towards Bowling Green, it collided with a bus owned and operated by the bus company then traveling south on that highway, enroute from Louisville, Ky., to Nashville, Tenn., and Miss Hopkins and the driver of the Ford were killed. For her death her administrator sued the bus company and the administrator of Sherman Prewitt, the driver of the Ford. When the case was called for trial, the plaintiff dismissed without prejudice his action against the administrator of Prewitt.

West of this highway and north of this lane there is a field belonging to Joe McFadden. This field is considerably higher than both the lane and the highway, and much upgrown with weeds and sumac bushes, so that it was not possible for those in the Ford to see the bus or for those in the bus to see the Ford before it came out onto the highway.

As the Ford came out of the lane, the driver of the bus, misjudging the speed of the Ford and hoping to pass in front of it, turned to the left, and the collision took place a little to the left or east of the center of the highway; a fair deduction being about 3 feet from the center line. Miss Corinne Hopkins, one of the surviving occupants of the Ford, testified they had got on their side of the highway; that is, on the east side. The highway is 60 feet wide, and thus it appears the Ford had traveled about 33 feet after it entered the highway before it was struck. Only 18 feet of the center of this 60-foot highway is improved, so this Ford had traversed 21 feet of the shoulder or side of the highway and 12 feet of the paved or improved portion, a total of 33 feet, when this happened.

Various estimates are made by the witnesses of the distance of the bus from the Ford when the Ford came out of the lane and into view. The average of these

estimates is 22 feet. Thus, while the bus was traveling 22 feet, the Ford traveled 33.

The average of the various estimates of the speed of the bus is 28½ miles per hour, and a simple calculation will show the speed of the Ford was nearly 43 miles per hour. No witness attempted to estimate the speed of the Ford, but these figures are conclusive. There are many statements of the witnesses to same effect. One witness in his testimony said, "A Ford shot across the road;" another, "A Ford popped out in front of us," another, "This car darted out into the highway;" another, "there was a car, seemed to shoot right out in front;" and another said, "There was a Ford car darted out." A simple calculation will show that when this collision occurred this bus was moving about 41½ feet per second, the Ford over 62 feet per second, and this collision occured in about two-thirds of a second after the Ford came into view.

There is some intimation in the evidence and in the argument that, if the driver of the bus had turned to the right instead of turning to the left, he would have passed behind the Ford, and no one would have been injured, but, with only two-thirds of a second in which to act, the bus company is not responsible if he chose not the wisest course. Ky. Traction & Terminal Co. v. Roschi's Adm'r, 186 Ky. 371, 216 S. W. 579; 45 C. J. "Negligence," Secs. 92 and 95.

A rain was falling at the time, which tended to render the highway slick and brakes less effective, and, considering the brief interval of time in which to do anything, this must be held to be an unavoidable accident for which it is not responsible unless the bus company is guilty of some antecedent negligence which brought it about. As one enters this lane from the highway, it drops down to a point a short distance from the highway, which the witnesses refer to as "in the bottom." Two of the occupants of the Ford survived the accident, and they testify that they stopped in this bottom, a right smart piece back one says, and 30 feet back another says, rolled up the windows to shut out the rain, and one of them says they looked and listened for the traffic. This evidence looks much like an afterthought, for they knew the bus was not going to come up the lane, they knew they could not from that point see anything on the highway, nor could they hear well from that point on account of the noise of their own motor, which was running, and

of the falling rain. If they had given one thought to the bus, the place to have looked and listened for it was when they reached the mouth of the lane and had a view of the highway.

Coming now to the operation of the bus and the alleged negligence therein, pleaded and relied on by plaintiff, we find the plaintiff claims the bus was operated at a reckless and high rate of speed without sounding the horn or giving any warning of its approach.

This accident happened in the country, the average estimate of the speed of the bus was, as we have said, 28½ miles per hour, and the highest estimate made by any witness was 35 to 40 miles per hour, so the allegation of excessive speed was not proven. There was evidence the bus was going down hill, and it is argued that for that reason additional effort should have been made to guard the speed of it. The evidence shows that from Cartwright's Store to the point of the accident there is a down grade of 1 3/5 per cent. In other words, a difference of 19 inches in 100 feet. Such a slope is hardly perceptible, and certainly cannot be classed as a dangerous grade. Between Cartwright's Store and the point of the collision this highway follows a winding course, and the plaintiff endeavored to make of the two winds in it such curves as to make section 2739g-47, Ky Stats., applicable and to require the bus company to sound its horn therefor, but no witness said these curves obstructed the view at all and all the evidence tends to show the driver of the bus could, before he reached either of these winds, not only see around it, but could then see every portion of the highway even to the point of the collision. The law does not impose upon the operator of a motor vehicle the duty of sounding his horn for a curve unless it obstructs his view so that he does not have a clear view of the highway ahead for 150 feet, which was shown not to be the case here, and, if on the next trial the evidence about these so-called curves should be the same, then evidence relative to whistling or sounding the horn for them should be omitted.

The plaintiff alleged the bus company did not have its bus under control. The evidence shows the bus was on its right side of the road, and that the driver was paying attention we know from the fact that in the brief time he had he swerved the bus to the left, and applied the brakes with such effect that some of the passengers were pitched forward in their seats. The appellee seems to

direct his evidence on this feature to the speed of the bus, which he contends was such as to amount to lack of control. To have the bus under that control required by the law, it was only required to have its bus under reasonable control; that does not mean it must be able to stop its bus instantly under any and all circumstances, but that it must have it under such control that under the circumstances the bus can, with the mechanism provided, be brought to a stop with a reasonable degree of quickness. See Carruthers v. Campbell, 195 Iowa, 390, 192 N. W. 138, 28 A. L. R. 949. The proof here fails to show any lack of control. A bus cannot under such circumstances as proven here be expected to stop in two-thirds of a second. Thus the proof fails to show, any unreasonable rate of speed, any necessity to sound the horn for the so-called curves, any lack of control, or any negligence after discovering the peril of the occupants of the Ford, and the only circumstance left to take the case to the jury, was the alleged failure of the defendant to give warning of the approach of its bus to this intersecting lane, and on that score the verdict is flagrantly against the evidence. Seven of the witnesses who were in the bus and in a position to hear it say the driver did sound the horn, while those who say no warning was given were none of them, except the occupants of the Ford, anywhere near the bus nor did they have their attention directed to it at all. Where witnesses testify a thing did occur, and they heard it (e. g., the giving of signals), and other witnesses of equal credibility testify they did not hear it and it did not occur, courts are inclined to give greater weight to the testimony of the class first named, for the reason that the failure of the negative witnesses to hear it may be attributable to want of attention at the time or to lack of opportunity to hear. Louisville & N. R. Co. v. Molloy's Adm'r, 107 S. W. 217, 32 Ky. Law Rep. 745; Bryson's Adm'r v. Briggs et al., 104 S. W. 982, 32 Ky. Law Rep. 159; Miller v. Louisville Ry. Co., 148 Ky. 126, 146 S. W. 26; Chestnut v. Tracy et al., 144 Ky. 753, 139 S. W. 966; Lurker v. Ross (Ky.) 121 S. W. 647; 23 C. J. p. 42, sec. 1787; 10 R. C. L. p. 928, sec. 92.

There was evidence the speedometer on this bus was not working, and that the bus had no clock upon it, which should also have been excluded, as these things, or the lack of them, had nothing to do with this collision.

By section 2739g-28, Ky. Stats., it was the duty of the bus company to equip this bus with a horn, bell, or

other device, and, whenever necessary, to sound same in order to give warning of the approach of the bus, but not to give such warning unnecessarily. By reason of its regular use of this highway, the bus company knew of this intersecting lane and of such obstructed view, and resulting danger, if any, as may exist thereat, and under these circumstances this case should have gone to the jury under an instruction requiring it to give warning of its approach thereto, if the jury shall from the evidence find that under the circumstances warning thereof was necessary. Instruction 1 should be modified accordingly.

In addition, the court will give the jury this instruction:

"The court further instructs the jury, that the negligence, if any, on the part of Sherman Prewitt the driver of the Ford car, in which Miss Christine Hopkins was riding on the occasion mentioned in the evidence, cannot be imputed to her, and such negligence, if any, on the part of Sherman Prewitt, is no defense to this action, unless you shall believe from the evidence that such negligence, if any, on the part of Sherman Prewitt, was the sole cause of the collision complained of and the injury and death of Miss Hopkins, and if you shall so believe from the evidence, then the law is for the defendant, and you will so find."

The giving of such an instruction on sole negligence was approved in L. & N. R. Co. v. Scott's Adm'r, 184 Ky. 319, 211 S. W. 747, where the facts and conditions were analogous to facts and conditions existing where this accident occurred.

Instruction 5, which dealt with the care to be exercised by Miss Hopkins, should be so modified as to conform to the instruction approved in Thurman v. Ky. T. & T. Co., 218 Ky. 594, 291 S. W. 1037.

The bus company introduced evidence that this bus was equipped with a governor which limited its speed to 38 miles per hour. To meet this, the plaintiff in rebuttal was allowed to show that other busses had made greater speed when traveling over this same road. The court should not have admitted this evidence in the absence of a showing that such busses were of similar make to the bus involved in this accident and were equipped with similar governors, similarly adjusted. Such evidence

would not show how fast the bus involved in this accident was going, but would only show how fast such a bus so equipped could go. This evidence is admissible solely for the purpose of affecting, if it does, the credibility of the statement that because of these governors this bus could not go faster than 38 miles per hour. It is no evidence of the speed of the bus in question just before this accident. It merely shows what such a bus so equipped could do, and not what this bus was doing. The court should have so admonished the jury. In the absence of evidence about these governors and their effect, the court will limit the evidence about speed to the bus and time in question strictly. The speed of a car 400 yards from the point of collision was held properly excluded in Stevens v. Potter, 209 Ky. 705, 273 S. W. 470.

The court committed reversible error in allowing the plaintiff's attorney, over the objection of the defendant, to say the things he said in his argument, but, as this may not occur again, we will not discuss it further.

The judgment is reversed.