## Kroger Grocery & Baking Co. v. Schneider.

(Decided May 9, 1933.)

WILLIAM J. DEUPREE and NICHOLS, MORRILL, WOOD, MARX & GINTER for appellant.

ELMER P. WARE, ORIE S. WARE and WILLIAM O. WARE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This is an appeal from a $1,040 judgment for personal injuries.

The basis of the action is that appellant sold appellee a loaf of bread containing a piece of metal wire, which penetrated and infected her gum, and caused her great pain and suffering. The defense was a general denial and a plea of contributory negligence.

The facts disclosed by the evidence are these: Appellant, the Kroger Grocery & Baking Company, operates its own bakery, and sells its bread and other bakery products through its retail stores, one of which is located at Twelfth and Holman streets in the city of Covington. About 11 o'clock on the morning of December 2, 1930, appellee, Margaret Schneider, purchased a loaf of sandwich bread at the Twelfth and Holman street store. She then went directly to her home, which was nearby, unwrapped the bread, and cut a slice from the loaf. On taking a bite of the bread she felt something sharp penetrate her gum on the right side of the palate and lodge there. Her gum began to bleed, and she became very nervous and excited. An hour or so later she called at the store, and Mr. Garnet, the manager, testified that he saw her mouth bleeding, and advised her to see a doctor or dentist at once. About 3 o'clock that afternoon she saw Dr. Herget, who occupied a suite of offices with Dr. Graner, a dentist. Dr. Graner was

not in at the time, but Dr. Herget examined the mouth and used a blunt probe, but did not find any foreign substance in the gum. He then advised appellee to return that evening and have Dr. Graner make an examination. This she did, and both Dr. Graner and Dr. Herget say that they could discover nothing that indicated the presence of a foreign substance in her gum. Appellee returned to her home, where she experienced a series of chills, and also claims that she suffered a miscarriage the next morning. Dr. Brown, her family physician, was called, and he could not tell positively whether appellee was suffering from a miscarriage or an irregular menstruation. In the meantime appellant's manager had sent for Mrs. Josephine Hellman, a practical nurse, and she waited on and cared for appellee for the next ten days. The nurse testified that she treated appellee "like any baby case"; that appellee was very weak and nervous, and complained constantly of a pain in her mouth. On December 10, appellee, at Dr. Brown's suggestion, went to see Dr. Gill, a radiologist and dentist, who took an X-ray of the gum, and made several plates. The X-ray pictures were absolutely negative as to any foreign substance in the gum, although there was an area of density about where the wire was later located, which was attributed to a small nodule of bone or piece of tooth.

On January 11, 1931, appellee called on Dr. D. B. Akers, of Cincinnati, a dentist, who had attended her on previous occasions. Dr. Akers found the gum much inflamed, and after working for some time finally located a fine piece of wire about one-fourth of an inch long, which was introduced in evidence. He found it necessary to remove the bridge in order to treat the inflamed area, and after the removal of the wire and several treatments, the pain was relieved and the bridge replaced. Appellee spent and incurred obligations amounting to $137 for physicians, medicines, nursing, and dental work, and suffered from extreme nervousness and general debility for several months. In addition to the evidence of Drs. Herget, Graner, and Gill, appellant introduced further evidence that it used the utmost care in the baking and preparation of the bread for market.

Appellant insists that it was entitled to a peremptory instruction on several grounds, and that even if

the evidence was sufficient to take the case to the jury its verdict is flagrantly against the evidence.

At the outset we are met by the contention that the case should not have gone to the jury, as the res ipsa loquitur doctrine does not apply, and no negligence was shown. In support of this proposition several cases are cited. But whatever may be the law in other states, we are committed to the rule that one who manufactures provisions for domestic consumption and sells directly to the consumer is bound at his peril to know that they are sound, and if by reason of their unsoundness the purchaser is injured the seller cannot escape liability by proof that he had been extraordinarily careful in the preparation of the provisions. Fleet v. Hollenkemp, 13 B. Mon. 219, 56 Am. Dec. 563. The reason for the rule is that the consequences resulting from the purchase of an unsound article of food may be so serious and so disastrous to the health and life of the consumer that public safety demands that there be an implied warranty on the part of the vendor that the article sold is fit for the use for which it was purchased, and as the seller has so many more facilities for ascertaining the soundness or unsoundness of the article offered for sale than are possessed by the purchaser; it is much safer to hold him liable than to compel the purchaser to assume the risk. This doctrine was reaffirmed in Nehi Bottling Co. v. Thomas, 236 Ky. 684, 33 S. W. (2d) 701, though it was pointed out in that case that where the manufacturer sells to a dealer and not directly to the consumer he may escape liability by showing that he exercised the highest degree of care. Here the bread was made by appellant and sold by it directly to the consumer. Therefore the rule announced in Fleet v. Hollenkemp, supra, applies and not the rule announced in Nehi Bottling Co. v. Thomas, supra. This rule is not peculiar to this state, but finds ample support in other jurisdictions, as shown by the following decisions and others that might be cited: Nelson v. Armour Packing Co., 76 Ark. 352, 90 S. W. 288, 6 Ann. Cas. 237; Wiedeman v. Keller, 171 Ill. 93, 49 N. E. 210; Parks v. C. C. Yost Pie Co., 93 Kan. 334, 144 Pac. 202, L. R. A. 1915C, 179, 7 N. C. C. A. 100; Farrell v. Manhattan Market Co., 198 Mass. 271, 84 N. E. 481, 15 L. R. A. (N. S.) 884, 126 Am. St. Rep. 436, 15 Ann. Cas. 1076, 21 Am. Neg. Rep. 142; Race v. Krum, 222 N. Y. 410, 118 N. E. 853, L. R. A. 1918F, 1172; Flessher v. Carstens Packing

Co., 93 Wash. 48, 160 Pac. 14, 13 N. C. C. A. 173; Priest v. Last, 2 K. B. 148, 72 L. J. K. B. N. S. 657, 51 Week. Rep. 678, 89 L. T. N. S. 33, 19 Times L. R. 527. In the circumstances the mere happening of the event was sufficient to take the case to the jury without other proof of negligence.

But the point is made that the alleged miscarriage was not the natural and reasonable consequence of appellant's act, but was due to fright, and therefore no recovery can be had. Clearly the rule that no recovery can be had for physical injuries due to fright without impact, Louisville & N. R. Co. v. Roberts, 207 Ky. 310, 269 S. W. 333, is not applicable. If the evidence for appellee is to be believed she was pregnant at the time, and there was an actual physical injury which so affected her health as to cause the alleged miscarriage. Therefore it cannot be said as a matter of law that the miscarriage was not the result of appellant's act.

There is the further contention that the verdict of the jury is contrary to the physical facts. The basis of the contention is that the X-ray plates were negative and did not show the presence of the piece of wire. The credibility of witnesses being for the jury, courts are not authorized to reject their testimony and refuse to submit the case to the jury on the ground that the facts testified to are highly improbable. It is only where the facts given in evidence are utterly at variance with the well-established and universally recognized physical laws, and therefore inherently impossible, that courts may refuse to submit the case to the jury. Louisville & N. R. Co. v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B, 471, and Id., 165 Ky. 736, 178 S. W. 1101; Wasioto & Black Mountain R. Co. v. Hall, 167 Ky. 819, 181 S. W. 629. In determining the weight of X-ray plates as evidence much depends on the care and skill of the operator, and the manner in which they are taken, and on their proper interpretation by the jury with the aid of expert testimony which is admissible for that purpose. State v. Matheson, 142 Iowa, 414, 120 N. W. 1036, 134 Am. St. Rep. 426; Ladlie v. American Glycerin Co., 115 Kan. 507, 223 P. 272. This necessarily results in the introduction of the human element, which is not always infallible. In view of these considerations we are not disposed to hold that the negative showing of the plates as interpreted by the expert was

such as to make it inherently impossible for the piece of wire to be in appellee's gum.

If appellee is to be believed, she experienced a sharp pain as if made by a piece of wire the moment she bit into the bread, and her gum bled profusely. Her willingness to submit to repeated examinations by physicians and dentists indicates good faith rather than the contrary. It is true that the doctors who examined her mouth were unable to find any foreign substance, but their examination was not thorough. Though the X-ray plates, as interpreted by the expert, were negative, there was positive evidence by the Cincinnati dentist that he found a piece of wire in appellee's gum, and on these facts it cannot be said that the verdict is flagrantly against the evidence.

Judgment affirmed.