## Hunt-Forbes Construction Co. v. Jordan's Adm'x.

(Decided June 23, 1933.)

FRANK C. MALIN, HOWARD VAN ANTWERP, Jr., and HU-BERT T. WILLIS for appellant.
MARTIN & SMITH for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Dollie Jordan, administratrix of H. A. Jordan (Hiram Anderson Jordan), deceased, brought this action against M. I. Forbes, J. W. Bosley, and George Hunt, a partnership doing business as Hunt-Forbes Construction Company, to recover damages for his death. From a verdict and judgment in her favor for $10,000, the defendants have appealed.

The facts are these: Appellant had just completed the work of surfacing with concrete the Mayo Trail. Under their contract with the state highway commission, they were required to repair the roads and driveways intersecting the Mayo Trail at the point of their intersection. This was done by spreading crushed limestone 5 or 6 inches deep at the intersection and for several feet back from the Mayo Trail. The Cat Creek road intersects the Mayo Trail almost at right angles. At the point of its junction with the Cat Creek

road the surface of the Mayo Trail inside the curve is about 2 feet 9 inches lower than at the outside. The Cat Creek road was about 16 feet wide, and at a point about 40 feet from the Mayo Trail it dropped to a depth of 15 feet. The inside of the curve on the south side of the road was about a foot lower than the north side of the curve. By reason of the physical situation it was a difficult turn for any one entering the Cat Creek road from the south. Late in the afternoon of June 27, 1931, appellants unloaded a truck of crushed limestone at this intersection, and a short distance from the Mayo Trail. According to the witnesses for appellee, the pile of crushed stone weighed 4 or 5 tons, was about 9 feet in length, and 4 or 5 feet in width, and was from 2½ to 3 feet in depth, and tapered off at the ends. On the other hand, there was some evidence for appellants that the depth of the pile was only a few inches.

On the night of June 27, 1931, the deceased, Hiram Jordan, his brother James, and their sister Ruth, and their cousins, Henry Jordan and Sunshine Jordan, were at the home of W. S. Bush on Little Cat Creek, about three miles from the intersection of the Cat Creek road with the Mayo Trail. Together with John Paul Bush, a nephew of W. S. Bush, they went to church at Bolts Fork in a five-passenger Ford touring car owned by W. S. Bush. The two girls and W. S. Bush were on the front seat, and the four boys, including the deceased, were on the rear seat. W. S. Bush drove the car to the church. Returning, they left the church about 10:30 o'clock and reached the intersection of the Cat Creek road and Mayo Trail about 11 o'clock. When they left the church, W. S. Bush and the two girls were on the front seat, and Bush was driving. After going about a mile and a half from the church, Ruth Jordan suggested that Sunshine do the driving. The car was stopped, the change was made, and Sunshine took the wheel. On reaching the intersection of the Cat Creek road with the Mayo Trail, Sunshine turned the car to the right for the purpose of taking the Cat Creek road. According to the occupants, the car was slowed down and its speed was from 4 to 7 miles an hour. There was no light, sign, guard, or barrier indicating the presence of the crushed stone. In striking the crushed stone, the car went over the embankment on the south side of the road, turned over, and Hiram Jordan was

killed. Sunshine Jordan, the driver of the car, described the accident in the following language:

"When I struck this pile of crushed stone it swerved the car over to the left.

"Q. 27. What occurred after that? A. Well, I tried to cut the wheels back to the right, but I didn't—or I did get them back, but I couldn't make the turn, and I tried to stop; I reached down and pulled the emergency brake back, but it was too far gone. It just went over the hill.

"Q. 28. Why could you not make the turn? A. Because this was in the intersection of the road, this pile of crushed stone, and I couldn't get around it.

"Q. 29. What effect did it have on the steering gear when you struck this stone? Did you for a time lose control? A. Well, to a—I suppose to a certain extent I lost control."

Ruth Jordan's account of the accident is as follows:

"Just as she started to make this turn into the Little Cats road her wheels hit upon the crushed rock and when they hit this crushed rock it kinda swerved her car to the left. After she saw we were going to the left she tried to make the turn back on the right and John Paul Bush says 'Sunshine you can't make it' and she saw she couldn't. She reached down and grabbed the emergency brake, tried to stop but it was already too far gone over the hill."

There was evidence on behalf of appellants that there was a car track on the crushed stone indicating that the car was not deflected, and that it went straight over the stone and down the embankment.

It is first insisted that appellants were entitled to a peremptory instruction on the ground that the facts testified to by the witnesses for appellee were at variance with well-established and universally recognized laws, and on the further ground that the presence of the crushed stone in the highway was not the cause of the accident, and the verdict was based purely on surmise, conjecture, or speculation. In support of the first ground the argument is as follows: The witnesses

for appellee, who were in the car, out of the many explanations they might have offered, chose the only one that was inherently impossible. When the car struck the crushed stone, it might have turned over, or have stopped, but, without divine intervention, it could not have been deflected to the left and have been caused to go over the embankment several feet distant. On the contrary, the effect would have been the exact opposite, and the car would have veered to the right and slackened its speed, and perhaps have stopped. The credibility of the witnesses being for the jury, courts cannot reject their testimony and refuse to let the case go to the jury on the ground that the facts testified to are highly improbable. It is only where the facts given in evidence are utterly at variance with well-established and universally recognized physical laws, and therefore inherently impossible, that courts may refuse to submit the case to the jury. Louisville & N. R. Co. v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B, 471, and Id., 165 Ky. 736, 178 S. W. 1101; Wasioto & Black Mountain R. Co. v. Hall, 167 Ky. 819, 181 S. W. 629; Kroger Grocery & Baking Co. v. Schneider, 249 Ky. 261, 60 S. W. (2d) 594. Its movements are not controlled by any fixed invariable physical law, and no one can say with absolute certainty what will happen to a car, or in what direction it will go, after striking a large pile of crushed stone. Much depends on the angle at which the wheels strike the stone and on the depth and density of the stone at the places of contact. There was evidence that the pile of stone tapered off toward the end. If the right wheel of the car struck the stone first and at a point where the stone was higher than at the place where it was struck by the left wheel, it would have a tendency to deflect the car to the left instead of to the right, and it cannot be said that the facts stated by the witnesses are inherently impossible.

In support of the position that the presence of the pile of crushed stone was not the proximate cause of the accident, appellants rely upon the following rule announced in 29 Cyc. 496, and approved in Burton v. Cumberland T. & T. Co. (Ky.) 118 S. W. 287, 289:

"A prior and remote cause cannot be made the basis of an action if such remote caus᷍ did nothing more than furnish the condition or give rise to the

occasion by which the injury was made possible if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated, and efficient cause of the injury. If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause.''

They also rely on the following statement of the rule contained in 22 R. C. L. p. 132, and cited with approval in Louisville Auto Supply Co. v. Irvine, 212 Ky. 60, 278 S. W. 149, 151:

''Whenever a new cause intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequences would not have happened, the second cause is ordinarily regarded as the proximate cause and the other as the remote cause.''

One placing an unlighted or unguarded obstruction in the highway at nighttime must of necessity anticipate that some injury may result therefrom to those driving cars on the highway. If the evidence for appellee is to be believed, the placing of the crushed stone in the highway did more than furnish the condition or give rise to the occasion by which the injury was made possible. On the contrary, it caused the car to veer to the left and thus produced a situation calling for immediate action, and whatever the driver did was in no sense distinct and unrelated, but was made necessary by the movement of the car resulting from the presence of the crushed stone. Furthermore, it must not be overlooked that the negligence of the driver of the car was not imputable to Jordan, who was a guest, unless such negligence was the sole cause of his death, and that a recovery may be had if his death was the result of the combined negligence of appellants and the driver of the car. Consolidated Coach Co. v. Hopkins' Adm'r, 238 Ky. 136, 37 S. W. (2d) 1. In the circumstances we think the question of proximate cause was for the jury.

What we have said practically disposes of the contention that the verdict was based purely on surmise,

conjecture, and speculation. If it be true that the pile of stone caused the machine to veer and the driver to lose control over the machine, the conclusion that the presence of the pile of stone was the proximate cause of the accident is not a mere speculation or surmise, but naturally and reasonably follows from the proven facts.

The principal attack on the instruction is that appellant's theory of the case was not properly presented, and that instruction C offered by appellants, or a corrected instruction embodying the defense therein presented, should have been given. Instruction C reads as follows:

> "If the jury believe from the evidence that the decedent's death was solely due to the manner or method of operation of the automobile by Sunshine Jordan, the driver thereof, then the law is for the defendants and the jury should so find."

We find that by instruction No. 4 the court defined the duties of the driver of the car, and then told the jury that, if they believed and found from the evidence that there was a failure upon the part of the driver of said car to exercise such care in any of the particulars referred to, "and that as the direct and proximate result, and solely by reason thereof the accident in question was caused, and decedent lost his life," then their verdict should be for the defendants. The point is made that this instruction did not properly present appellant's defense, as they were not liable if the accident was due solely to the act of the driver, whether negligent or innocent. If the presence of the pile of stone played no part in the accident, and the accident was caused either by the failure of the driver to make the turn, or by her driving the car headlong over the embankment, then, in the very nature of things, she was guilty of negligence, and there is no room for the contention that her act was innocent. We therefore conclude that appellants' defense as embodied in the offered instruction was fully covered by instruction No. 4, which told the jury in substance to find for appellants if they believed from the evidence that the negligence of the driver was the sole cause of the accident, and, that being true, the refusal of the court to give the offered instruction, or one similar in effect, was not error.

On the whole we find no error in the record prejudicial to appellants' substantial rights.

Judgment affirmed.