## Haller's Pet Shop et al. v. Pearlman.

(Decided Feb. 27, 1934.)

BLAKEY, DAVIS & LEWIS and HUFFAKER, HOGAN & BERRY for appellants.

HUBBARD & HUBBARD for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Mildred Pearlman, an infant 17 years of age, brought this suit through her father and next friend, Samuel Pearlman, against Gertrude Haller, trading and doing business as Haller's Pet Shop, and J. W. Ford, to recover damages for personal injuries. From a verdict and judgment against both defendants for $2,000 they appeal.

About 4:30 on the afternoon of March 28, 1932, Walter Ford, who was driving a five-passenger Packard car belonging to his father, J. W. Ford, met several of his friends, including Mildred Pearlman, at Forty-First and Market streets in Louisville. He invited them to accompany him for the purpose of taking a drive, and then taking one of the occupants of the car to the dentist. At first there were eight occupants of the car, three on the rear seat, two seated on cushions on the floor, and three in the front seat. Mildred Pearlman was seated in the middle on the back seat. After driving for a while, one of the occupants was let out, thus leaving seven occupants at the time of the accident. Ford was driving west on Vermont avenue, and the Haller truck was being driven south on Forty-Third street. Just prior to the accident, the speed of the car was fixed by various witnesses at from 10 to 60 miles an hour. According to Ford, the driver, he had been going about 35 miles an hour, but slowed down to not

much over 10 miles an hour as he approached the intersection. When about 40 feet back, he blew his horn. When he got into the intersection, he saw the Haller truck a little back of the intersection. The Haller truck was coming fairly fast. As he entered the intersection, he blew his horn, and first thought that the truck was going to stop. When he saw the truck was coming on, he swerved in order to let it pass him. The truck's left fender struck his right fender toward the rear. His car went to the southwest corner, hit a telephone pole, a tree, and a fire plug, and then turned over on the right side. The truck stopped about 10 feet in front of him further west. According to the driver of the truck, he was going about 15 or 20 miles an hour. He saw the car when 50 or 55 feet from the intersection. At first he put on his brake, and then released the brake in order to make a right-hand turn. He did not know whether there were any skid marks from the truck on Forty-Third street. When he first saw the Packard it was going from 50 to 55 miles an hour, but he could not say whether it slowed down any or not. He did not blow his horn as he entered the intersection. Other witnesses saw the skid marks on Forty-Third street for a distance of several feet. From the foregoing statement it is apparent that there was sufficient evidence of negligence on the part of both defendants to take the case to the jury and sustain the verdict.

It is insisted on behalf of appellant Haller that the court erred in not instructing the jury to find for her, if they believed from the evidence that the negligence of the driver of the automobile was the sole cause of the accident. It is true that the negligence of the driver of an automobile cannot be imputed to a guest, and will not prevent the guest's recovery against another, unless the driver's negligence was the sole cause of the collision, and we have approved instructions to that affect. Consolidated Coach Corporation v. Hopkins' Adm'r, 238 Ky. 136, 37 S. W. (2d) 1; Hunt-Forbes Construction Co. v. Jordan's Adm'x, 250 Ky. 455, 63 S. W. (2d) 501. Doubtless, if the court had instructed on imputed negligence, an instruction, which it is claimed should have been given, would have been proper, but the court did not instruct on that subject, and the general instructions offered by appellant Haller defining the duties of the driver of the automobile did not cover the subject or even suggest the necessity of an appropriate instruc-

tion. Aside from this, the instruction given by the court set out the duties of the driver of the truck, and told the jury in substance that, if they believed from the evidence that he failed in the performance of any one of those duties, and that such failure, if any, was the proximate cause of the collision, then the law was for plaintiff as against Gertrude Haller, and the jury should so find. The jury were also told that, unless they so believed from the evidence, the law was for Gertrude Haller, and they should so find. In short, the jury were advised that there could be no recovery against Gertrude Haller, unless there was some negligence on the part of the driver of the truck. Clearly, the legal effect of this language is the same as if the jury had been told that there could be no recovery if the negligence of the driver of the automobile was the sole cause of the collision. In the circumstances, we are constrained to hold that the failure of the court to tell the jury there could be no recovery against Gertrude Haller, if the negligence of the driver of the automobile was the sole cause of the accident, was not prejudicial error.

Another contention of appellant Haller is that the court erred in refusing to instruct on appellee's contributory negligence. While it is true that the negligence of the driver is not imputable to the guest, it is nevertheless the rule that the guest must exercise ordinary care for her own safety, and, if she has an opportunity to take precautionary measures to avoid the accident, and fails to do so, she may be guilty of contributory negligence. Here, however, there was no evidence that the driver of the automobile was drunk or a reckless driver, and this fact was known to appellee. She was only seventeen years of age at the time of the accident, and had had no experience in driving a car. She was seated in the rear of the car, and it is not an easy matter for one so situated to gauge accurately the speed of a Packard car. Even if it was apparent that the driver was going at an excessive rate of speed, she had the right to assume that he would slow down for the intersection. As he approached near the intersection, the truck suddenly appeared. In view of the emergency, appellee had no opportunity to complain of the driver's speed, or to leave the car, or to warn him of the danger, or to do anything else to avoid the accident. We therefore conclude that the refusal to instruct on appellee's contributory negligence was not error. Cham-

**134**

bers v. Hawkins, 233 Ky. 211, 25 S. W. (2d) 363; Ray v. Ray, 196 Ky. 579, 245 S. W. 287.

Appellants both claim that the verdict is excessive. Dr. White, who was called by appellants, testified in substance as follows: He examined appellee from head to foot. There was a cut a quarter of an inch long on the outward portion of the left eyelid. Her left hip was bruised and abraised, her left knee was partly denuded of skin and abraised. There was a small lump on her scalp. The right arm above the elbow was bruised. There was a bruise over the biceps of the other arm. She also had a stiff neck. He treated her for about three months. At first he came twice a day, and after that three or four times a week. He found no injuries to her back. He found no displacement, and her menstrual periods were all right. She was nervous for the first two or three days, but got over that. She claimed to be nervous after that, but he could not find anything the matter with her. She was in bed a week, or something like that. Dr. C. W. Jefferson, who examined appellee on behalf of appellants, found her normal in practically every respect. In his opinion, the swelling on her chest was congenital, and did not result from the injury. Appellee made no reference to her menstrual period or organs, and he made no examination. If, however, there was any irregularity, that would be nothing unusual in a girl of her age. Dr. C. H. Harris, who was appointed by the court to examine appellee, testified that appellee was perfectly normal when he examined her, that the enlargement on her chest was congenital, and not the result of the accident; that there was no misplacement of the womb; and that he did not agree with Dr. Johnson that such was the case; that there was no muscular rigidity in her back; that the irregularity in her monthly periods, if any, was not traceable to the accident; and that her nervousness was largely induced by fear of the examination. On the other hand, appellee's evidence was to the effect that she had cuts on both her eyes and both of her eyelids; that she had a sprained knee, bruised hip, and sprained back, and contusions all over her body; that her third rib was torn from the breastbone, leaving a large knot, which was perceptible at the time of the trial; that she suffered a severe nervous shock; and that her monthly periods, which were normal prior to that time, occurred twice a month after the accident.

Dr. Johnson began treating appellee about four months after the accident. At that time she had rigidity of both muscles on each side of the back, and in his opinion, concurred in by Dr. Harris, there was displacement of the womb. He considered that her nervous condition was partly caused by the accident. On the left-hand side of the second rib there is a little mass which he considered was probably due to the cartilage that attaches the rib to the breastbone. To correct the misplaced womb would require an operation. Considering the character and extent of the injuries which plaintiff received, the fact that she received a severe nervous shock, and was nervous at the time of the trial, and the further evidence as to the misplacement of her womb and change in the monthly periods, we are not prepared to say that the verdict is excessive.

Judgment affirmed.