STATE OF IOWA v. GEORGE MATHESON, Appellant.

**Evidence:** IMPEACHMENT. Where a witness on direct examination testified to nothing tending to show that the killing by defendant was not intentional, it was error to permit the State on cross-examination to lay the foundation for impeachment by asking him if he had not made certain declarations indicating his belief that defendant was guilty; and upon his denial to permit evidence that he had made such statements.

**Assault with intent to murder:** REASONABLE DOUBT: ACCIDENT: INSTRUCTIONS. On a prosecution for assault with intent to murder, defended solely on the ground that the injury was inflicted by the accidental discharge of a revolver in the possession of defendant, the jury should have been instructed that the State must prove beyond all reasonable doubt that the shooting was not accidental. In the instant case the instructions fail to state the rule.

**Evidence:** X-RAY PHOTOGRAPH: IDENTIFICATION. An X-ray photograph of a wound made at the direction of a physician who was present when it was made, and who testified that it was a correct representation of the condition of the body at that time, was sufficiently identified to be received in evidence over the objection that it should have been proven by the electrician.

**Same.** While neither the physician nor the electrician could testify that a spot indicated on the picture was a bullet, they could state that it was such as a bullet imbedded in the body would produce.

**Misconduct in argument.** Reference to the fact in argument by a prosecuting attorney that upon a former trial of defendant a verdict of guilty was returned and that the case was reversed on appeal was improper, but as only an exception to the remark was taken, with no request for a ruling, no error of the court was involved.

*Appeal from Pottawattamie District Court.*—HON. O. D. WHEELER, Judge.

FRIDAY, MAY 7, 1909.

UNDER an indictment charging assault with intent to murder, the defendant was convicted of assault with intent to inflict great bodily injury, and from the sentence on this verdict he appeals.—*Reversed.*

*Harl & Tinley* and *Flickinger Bros.,* for appellant.

*H. W. Byers,* Attorney General, and *C. W. Lyon,* Assistant Attorney General, for the State.

McCLAIN, J.—This is the second appeal in this case, defendant having been previously convicted, and the conviction set aside for errors in the admission of evidence and the giving of instructions. See 130 Iowa, 440. The opinion on the former appeal sufficiently states the nature of the case, and, in a general way, the evidence relied upon to sustain a conviction.

I. On the last trial Henry Matheson, defendant's father, testifying as a witness in his behalf, was again asked, as in the previous trial, to state on cross-examination whether he had made certain declarations tending to show his belief that defendant was guilty of the shooting, and on his denial of the making of such declarations witnesses were allowed, also over defendant's objection, to testify that such declarations were made. The error now urged in this respect is the same as that urged on the former appeal, wherein we held that, as the witness had on his direct examination given testimony indicating a belief on his part that defendant was not guilty of intentional shooting, he might be asked, on cross-examination, as to declarations inconsistent with such a belief for the purpose of laying a foundation for impeachment by proving such declarations. On the present trial, however, the witness did not testify on direct examination to any facts tending to show that the shooting was not intentional; nothing from which the jury could infer a belief, one way or the other, on the part of the witness as to the revolver in his son's possession having been accidentally discharged rather than intentionally fired. Under these circumstances his testimony was in no way impeached by proof of his prior declarations to the effect that defendant had shot the officer. Those declarations became, then, the mere declarations of a third person of a belief in defendant's guilt, and were not admissible, and the cross-examination with reference to such declarations, for the purpose of laying a foundation for proof thereof, was improper. The declarations which were proven for the purpose of impeachment were manifestly prejudicial to defendant, as they tended to show that his own father believed him to have intentionally shot the officer. Even the declarations of a father as to his belief in his son's guilt, are not admissible against the son in a criminal prosecution, unless they serve the purpose of impeaching the father's

1. EVIDENCE: impeachment.

testimony on the trial in favor of the son, or are brought under some other recognized rule as to the admission of declarations of third persons. Now as the father had not testified as to any fact tending to show that the son was innocent with reference to the shooting, there was nothing in his evidence inconsistent with his prior declarations, and the latter became simply declarations against the defendant. They were nothing more. Under this state of the record on the second trial, differing in this respect from that of the first trial, the court erred in allowing the prosecution to cross-examine the father as a witness in reference to these declarations, and in allowing proof thereof by way of impeachment.

II. On this trial, as on the one reviewed on the former appeal, the injury to the officer by the discharge of a revolver in the possession of defendant was admitted, 2. ASSAULT WITH INTENT TO MURDER: reasonable doubt: accident: instructions. and the sole issue of fact was as to whether the discharge of the revolver was accidental or intentional. On the former appeal the conviction was reversed because the court had not told the jury that the burden was on the prosecution to establish, beyond a reasonable doubt, that the shooting was not accidental. The only instructions given on this trial referring to the issue as to whether the discharge of the revolver was accidental were the following:

(12) If you find from the evidence that said pistol was accidentally discharged while being withdrawn from the pocket of the defendant, or by catching upon the clothing of the defendant while being thus withdrawn from his pocket, then such fact would not be sufficient to make out an assault.

(13) The defendant claims that he was carrying the revolver in the hip pocket of his overalls, and that he was in the act of taking the same from his pocket, when it was discharged, without any intention upon his part of discharging the same.

(14) It is for you to determine, from the evidence,

what were the circumstances under which the shot in question was fired, if it was fired, and you must determine this question in the light of all the facts and circumstances surrounding the transaction and tending to throw light thereon.

It is quite evident from the first of these instructions that the jury were to understand their duty to be to make an inquiry as to whether the revolver was accidentally discharged, and that only on an affirmative finding that it was so discharged would the defendant be relieved from the imputation that an unlawful assault had been committed; and the other two instructions are not inconsistent with such theory. If the rule that the prosecution should overcome the evidence tending to show an accidental assault by proof beyond a reasonable doubt that such assault was intentional is to be found in any of the instructions given, it must be so found in an instruction reading as follows:

(31) The defendant is, in the first instance, presumed innocent of the crime charged in this indictment, or of any crime; and you should proceed to a consideration of the evidence in this case with this presumption in mind. This presumption continues until the State has shown by the evidence before you beyond all reasonable doubt all the facts necessary to constitute an offense under this indictment, under the rules herein given you; that is, the evidence must be such as to fully and abidingly satisfy and convince you that such matters are true. If the evidence does so satisfy and convince you, then such matters have been shown beyond all reasonable doubt.

But the instruction last quoted contains no direct reference to the issue as to the accidental character of the injury. What "such matters" are which must be proven beyond a reasonable doubt can not be determined from this instruction, nor, so far as we can see, from any instruction given. For the defendant an instruction was asked in the following language: "The State must prove, not

only by a preponderance of the evidence, that the injury to Baker was not the result of an accident, but must satisfy your minds beyond all reasonable doubt that it was not an accident." The defendant was entitled to have this instruction, or some instruction embodying this proposition, given to the jury; and, as we are unable to find any equivalent statement in the instructions given, we reach the conclusion that the court erred.

III. On the former appeal an exhibit, consisting of an X-ray photograph or radiograph which it was claimed showed the location of the bullet close to one of the verte-

3. EVIDENCE: X-ray photograph: identification.

brae in the officer's body, was held to have been properly admitted in evidence, being identified by the electrician who made it as such a photograph. On the last trial the electrician who made the photograph was not called as a witness, and it is argued for defendant that the exhibit was improperly admitted. We think, however, there was no error in the ruling of the court admitting the exhibit, for the physician who directed the taking of the photograph, and who was present when it was taken, testified that it was a correct representation of the condition of the officer's body at the time it was taken. This physician would know, as well as the man who operated the machine, that the radiograph was the result of the action of the X-ray machine in producing a representation of the bony structure of the body, and of any piece of metal, such as a bullet, which might be imbedded therein.

Neither the operator nor the physician would be able to testify that the spot indicated on the radiograph was a bullet, but it would be competent for either of them to tes-

4. SAME.

tify that the spot was such as a bullet imbedded in the body would produce. For the reasons just indicated the testimony of the physician that the spot on the radiograph to which his attention was called represented a bullet in the body was also competent.

IV. The county attorney, in his opening and closing arguments to the jury, referred to the fact that the case had once before been tried, and a verdict of guilty had been returned, and that the sentence on this verdict has been reversed on appeal. Such comment we think was improper, but the only complaint thereof made by counsel for defendant at the time was by interposing an objection after the statements were made, and asking an exception. The court made no ruling with reference to the matter. In this condition of the record we can not see that the court erred, for it was not asked to do anything which could have saved the defendant from the prejudicial effect of the improper statements. Whether the statements were such as would in themselves constitute misconduct requiring a new trial, we need not now determine, as we have no occasion to anticipate the repetition of such improper statements on another trial.

5. Misconduct in argument.

For the errors pointed out, the judgment is *reversed*.