### KIRK JOSEPH STAMBAUGH *v.* STATE OF MARYLAND

[No. 584, September Term, 1975.]

*Decided March 29, 1976.*

The cause was argued before MORTON, POWERS and MASON, JJ.

*Thomas J. Aversa, Jr., Assigned Public Defender,* for appellant.

*James G. Klair, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *David A. Wilson, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

Kirk Joseph Stambaugh killed his estranged wife's paramour, Harold Morningstar, with a single blast from a shotgun. The homicide occurred between 1:00 A.M. and 2:00 A.M. on 3 February 1975 on the sidewalk in the 300 block of Shagbark Road, in Baltimore County, where Mrs. Stambaugh lived.

Stambaugh was indicted for murder and in a trial before Judge John N. Maguire and a jury in the Circuit Court for Baltimore County, was convicted of murder in the second degree. He was sentenced to serve a term of 30 years.

As appellant here Stambaugh contends that there were several errors in his trial which require that his conviction be reversed. We agree with one of his contentions, as does the State, and we shall reverse the judgment and remand the case for a new trial. It is not necessary that we consider the appellant's other contentions.

The evidence was extensive, but reference to a few of the immediate facts is sufficient for our decision. Stambaugh and his wife had been separated for over a year. Morningstar had lived with Mrs. Stambaugh part of that time, but had moved to other quarters in the next block a few weeks earlier. A few minutes before the killing, Stambaugh parked his car at the curb near his wife's home. He was observed by two or three neighbors, who were in no way otherwise involved. Morningstar came out of Mrs. Stambaugh's house. Stambaugh, holding a shotgun, approached him. One of the neighbors called the police. The two men walked along the sidewalk, Morningstar ahead,

Stambaugh a few feet behind. A shot was heard. Morningstar fell, wounded. He died a few hours later at a hospital.

Appellant testified in his own defense. He said that when he encountered Morningstar on the sidewalk he was afraid Morningstar would shoot him. He said that as they were walking he was two or three feet behind Morningstar. He then said:

> "He made a move, and struck around at me and went to the left. As he went to the left, I fell back like and the gun was discharged and it hit him."

He went over it again:

> "At first I wanted his gun, like I say the gun was facing down, as like this hunting where you hold the gun on your arm cocked up. Then, I realized there was a round in the tube, and I tried to discharge it. I didn't want to make the move. A pump shotgun makes a real loud noise. I tried to go slow. He walked back and kicked back. He come around with his foot like trying to kick me, two, two and a half feet in front of me, like to kick me. I went to the left and that is where he went, and the rifle was discharged."

Whether to believe or to reject Stambaugh's testimony tending to show that the shooting was accidental was solely for the jury, in the exercise of its duty to assess credibility. The evidence was sufficient to generate a jury question on the issue.[1] Stambaugh was entitled to a constitutionally sound instruction to the jury to guide it in the resolution of that issue.

This case was tried in the circuit court in May 1975. More than a month later, on 9 June 1975, the Supreme Court of the United States decided *Mullaney v. Wilbur*, 421 U. S. 684,

---

1. We note that the same evidence excluded self defense as an issue. When one contends that harm he inflicted upon another was justifiable — that he had a legally sufficient reason — he necessarily acknowledges that it was intentional. When he contends that it was excusable — that it was an accident — he excludes the possibility that it was done for a reason.

44 L.Ed.2d 508, 95 S. Ct. 1881. In *Evans v. State,* 28 Md. App. 640, 349 A. 2d 300 (1975), this Court, in an exhaustive opinion by Judge Moylan, analyzed *Mullaney v. Wilbur* and discussed its application to the trial of criminal cases in Maryland. In *Evans* we held that *Mullaney* was retroactive. We held that the errors in jury instructions which transgressed the constitutional rights of the accused, as those rights were made clear in *Mullaney,* were plain errors material to the rights of the accused, which we would take cognizance of and correct, Maryland Rule 756 g, although no exception was taken to the instructions when they were given. *Brown v. State,* 14 Md. App. 415, 287 A. 2d 62 (1972).

As a part of his instructions to the jury the trial judge said:

> "The indictment charges the Defendant with Murder in the First Degree. However, under the Maryland law, even though the other counts are not specifically set forth, you may in your de- liberations, consider Murder in the First Degree, Murder in the Second Degree, or Manslaughter, all of which are various degrees of felonious homicide. Now, by way of explanation, you are advised that homicide is presumed to be Murder in the Second Degree, and the burden is on the State to show that the killing was willful, deliberate and premeditated, if the crime is to be elevated to First Degree Murder. On the other hand, if you find that the Defendant is guilty of the homicide with which he is charged, the burden is upon the Defendant to establish such factors of excuse, justification or mitigation which would reduce the crime to Manslaughter."

No doubt because all concerned considered the instruction to be a correct statement of Maryland law, no exception was taken.

After the jury had retired, it requested additional instructions. Judge Maguire told the jury, without objection:

> "By way of explanation, you are advised that

homicide is presumed to be Murder in the Second Degree, and the burden is on the State to show that the killing was willful, deliberate, and premeditated, if the crime is to be elevated to First Degree Murder. On the other hand, if you find that the Defendant is guilty of the homicide with which he is charged, the burden is upon the Defendant to establish such factors of excuse, justification, or mitigation which would reduce the crime to Manslaughter."

It was error to instruct the jury "that homicide is presumed to be Murder in the Second Degree." *Mullaney v. Wilbur, supra, Evans v. State, supra, Garland v. State,* 29 Md. App. 27, 349 A. 2d 374 (1975). That error alone would require us to reverse and remand this case for a new trial.

In *Evans v. State, supra,* and in *Wright v. State,* 29 Md. App. 57, 349 A. 2d 391 (1975), following *Mullaney v. Wilbur, supra,* we held that the issue of self-defense was fairly in the case, and that it was reversible error to instruct the jury that the accused had the burden of persuading them of the truth of the facts constituting that defense.

In the present case, following the same authorities, we hold that the issue of accident was fairly in the case,[2] and that it was reversible error to instruct the jury that the accused had the burden to establish the factor of excuse.

*Judgment reversed, case remanded for a new trial.*

---

**2.** We are aware that in a retrial of this case the evidence might well require consideration of an instruction on a question of law not raised or decided below and not raised or argued on appeal. See Mills v. State, 13 Md. App. 196, 282 A. 2d 147 (1971), and other cases there cited, stating that involuntary manslaughter at common law is defined as the killing of another unintentionally and without malice (1) in doing some unlawful act not amounting to a felony, or (2) in negligently doing some act lawful in itself, or (3) by the negligent omission to perform a legal duty.