STATE of Iowa, Appellee,

v.

Darrell Wayne FOWLER, Appellant.

No. 58472.

Supreme Court of Iowa.

Dec. 15, 1976.

Raymond Rosenberg, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Steven K. Sandblom, Asst. Atty. Gen., Edward N. Wehr, County Atty., for appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, REYNOLDSON and McCORMICK, JJ.

RAWLINGS, Justice.

By a two-count information the State charged Darrell Wayne Fowler feloniously killed his former wife Patricia (Section 690.-2, The Code 1973) and assaulted Richard Kamps with intent to murder (Code § 690.-6). These alleged offenses stemmed from a December 17, 1974, tragic encounter in Davenport. Trial jury found defendant guilty of murder in the second degree and assault with intent to murder. He appeals from judgments attendantly entered. We reverse.

Weighing the evidence in a light most favorable to these verdicts, the jury could have found Fowler spent the day preceding the involved event with his six children and took them to evening church service. Their custody had been divided equally between defendant and Patricia by a February 14, 1974 dissolution of marriage decree. After church defendant drove to Patricia's home in order to return the three youngest children to her. This was about 9:00 p. m. At approximately 10:30 Patricia and her friend Kamps emerged from the house. An argument ensued between Fowler and Kamps. This ripened into a physical encounter during which defendant "swung out of the car with a gun" and shot Kamps. Patricia started running toward a wooded area near her home pursued by defendant. He stopped under a street light, raised his arm and shot the fleeing woman. Two police officers arrived at the scene. They there observed defendant holding Patricia in his arms. He was told to stand up and back away. During this episode defendant said "I got mad and shot her". Fowler was then arrested.

In support of a reversal defendant contends (1) he was denied his constitutional right to a fair trial by virtue of his incarceration without bail and absent a probable cause determination of sufficient grounds to detain him pending trial; (2) in course of trial the court erroneously (a) admitted hearsay testimony, (b) allowed the prosecution to improperly cross-examine him, (c) precluded defense impeachment of a State's witness and (d) refused submission of requested jury instructions.

Although our reversal is based upon assignment (2)(a) above, other questions posed which may recur on retrial will be considered.

I. Defendant first asserts the combined denial of bail and probable cause hearing violated the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States. He thereupon requests the imposition of some appropriate but unspecified sanctions.

No useful purpose will be served by alluding to every procedural event which preceded Fowler's release on bail.

He was arrested November 18, 1974. November 20, Associate District Judge Steffen appointed counsel for the accused and ordered preliminary hearing be held December 17. After a December 5 hearing, on defendant's motion, Judge Steffen held the offense charged was "nonbailable". Presumably the court here alluded to the first degree murder charge.

December 16, a county attorney's information was filed charging the same offenses as before. The preliminary information was then dismissed, absent any hearing thereon.

December 24, Fowler was arraigned before District Court Judge Phelps and a not guilty plea entered.

January 29, 1975, Judge Phelps fixed bail at $150,000. After conviction this court ordered defendant be released from custody on the filing of a $100,000 appeal bond. See Code § 763.9. Bail was thereupon posted.

**514**

■ A. Initially considered is Fowler's claim regarding a probable cause for detention hearing. More specifically, he maintains Code § 763.1, quoted *infra*, is unconstitutional, at least insofar as it permits pretrial detention without a probable cause determination.

In support of this position defendant leans heavily on *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

*Gerstein* was a class action by persons awaiting trial challenging a Florida procedure which permitted authorities to hold and try an accused on a prosecutor's charge without any probable cause hearing. In relevant part the Fourth Amendment was held to require a determination of probable cause promptly before or after arrest as a prerequisite to extended pretrial detention. Id., 95 S.Ct. at 863, 868–869.

In like vein the majority stated, id., 95 S.Ct. at 868:

"Although we conclude that the Constitution does not require an adversary determination of probable cause, we recognize that state systems of criminal procedure vary widely. There is no single preferred pretrial procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole. While we limit our holding to the precise requirement of the Fourth Amendment, we recognize the desirability of flexibility and experimentation by the States. It may be found desirable, for example, to make the probable cause determination at the suspect's first appearance before a judicial officer, see *McNabb v. United States*, 318 U.S. 332, 342–344, 63 S.Ct. 608, 613–614, 87 L.Ed. 819 (1943), or the determination may be incorporated into the procedure for setting bail or fixing other conditions of pretrial release."

Admittedly, Pulaski, "Preliminary Examinations in Iowa: The Constitutional Considerations", 60 Iowa L.Rev. 462 (1975), may be said to bolster defendant's contention regarding the constitutionality of Code § 763.1. But any attendant question need not be here resolved. December 5, 1974, the presiding Associate District Judge held, after a bail review hearing, "defendant is charged with First Degree Murder which is nonbailable." This perforce means the proof was found to be evident or the presumption great. See Code § 763.1. By the same token the *Gerstein* probable cause pronouncement, 95 S.Ct. at 868, heretofore quoted, was at least minimally satisfied.

Defendant's probable cause for detention assignment affords him no basis for appellate relief.

■ B. Next entertained is Fowler's denial of bail complaint. At this point abolition of the death penalty in this state comes into play.

Judge Steffen held the charged offense (murder) was "nonbailable". It is evident Art. I., § 12 of the Iowa Constitution and Code § 763.1 constituted the basis for this holding.

The cited constitutional provision says, in relevant part: "All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses where the proof is evident, or the presumption great."

And, § 763.1 provides: "All defendants are bailable both before and after conviction, by sufficient surety, except for murder in the first degree and kidnaping for ransom when the proof is evident or the presumption great."

The viability of these enactments as they relate to capital offenses is at best doubtful since the death penalty could not have been imposed under existent laws in this jurisdiction.

Furthermore, the decision in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), has prompted some courts to hold that a person charged with a capital offense may not be denied admission to bail. Others have held to the contrary. See 8 Am.Jur.2d, Bail and Recognizance, § 31 (Supp.1976); 8 C.J.S. Bail, § 34(2) (Supp.1976); Kamisar, LaFave & Israel, Modern Criminal Procedure, ch. 13 at 778–782 (4th ed. 1974).

Be that as it may, we are here neither called upon to resolve the above conflict nor does this court elect to do so. Also by way of exclusion, it is not for us to now express any view regarding defendant's rights had he timely sought relief by certiorari or even mandamus.

In any event, this statement in *Gerstein*, 95 S.Ct. at 865 is deemed dispositive: "Nor do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction. *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886)." See also *State v. Montgomery*, 232 N.W.2d 525 (Iowa 1975); *State v. Grady*, 231 N.W.2d 869 (Iowa 1975); *State v. Lass*, 228 N.W.2d 758 (Iowa 1975).

Parenthetically, Judge Steffen would have been well advised to consider ABA Standards Relating to Pretrial Release, §§ 5.1, 5.5 (Approved Draft 1968). See also *People ex rel. Hemingway v. Elrod*, 60 Ill.2d 74, 322 N.E.2d 837 (1975). See generally *Grady v. Iowa State Penitentiary*, 346 F.Supp. 681, 682 (N.D.Iowa 1972).

Fowler was eventually admitted to bail. Moreover, *Gerstein*, 95 S.Ct. at 865, quoted *supra*, again becomes applicable.

The bail issue raised by defendant provides no basis for a reversal.

C. Finally in this vein, defendant contends the combined denial of probable cause hearing and delayed admission to bail served to deny him a fair trial. He fails, however, to show any premise upon which to hold a fair trial was thus denied and we find none. Then too, Fowler's combined contention is clearly the end product of claimed illegal detention which cannot be held to void the ultimate convictions here obtained. See *Gerstein*, quoted *supra*, 95 S.Ct. at 865.

■ II. It is also urged trial court erred in admitting, over defendant's timely hearsay objection, attorney McCarthy's testimonial recitation of extrajudicial utterances made to him by Patricia about four months prior to the time of her death regarding an assault then made upon her by Fowler.

This was patently hearsay. See *State v. Leonard*, 243 N.W.2d 887, 890 (Iowa 1976); *State v. Rush*, 242 N.W.2d 313, 319 (Iowa 1976); D. Seidelson, The State of Mind Exception to the Hearsay Rule, 13 Duquesne L.Rev. 251, 258, n. 12 (1974).

So the question posed is whether the controverted evidence was admissible under any recognized exception to the hearsay rule. See generally *State v. Kidd*, 239 N.W.2d 860, 864 (Iowa 1976); *State v. Hamilton*, 236 N.W.2d 325, 333 (Iowa 1975).

It is apparent the testimony here involved was offered to prove Patricia's (the victim's) state of mind, more particularly her alleged fear of defendant. This in turn posits two problems: (1) Did the utterances attributed to Patricia come within the evasive "res gestae" exception to the hearsay rule and (2) was decedent's state of mind relevant to any issue in the case?

At the outset we are satisfied the res gestae exception cannot justify the admission of Mr. McCarthy's subject testimony.

■ In the first place, utterances generally characterized as res gestae are not admissible unless foundationally shown to be relevant. See *State v. Mathias*, 216 N.W.2d 319, 322 (Iowa 1974); *State v. Battle*, 199 N.W.2d 70, 72 (Iowa 1972); 2 Jones on Evidence, § 8:7, at 175 (Gard 6th ed. 1972); McCormick on Evidence, § 288 at 686 (2d ed. 1972); 13 Duquesne L.Rev. at 253–254.

Next, it is apparent the assault was not so closely related, in point of time or place, and so intimately associated with the homicide, as to form one continuous transaction, or that proof of the former tended to establish the latter. See *State v. Oppedal*, 232 N.W.2d 517, 522 (Iowa 1975).

Furthermore, identity of the party who fired the fatal shot was not instantly in question since defendant was the admitted perpetrator. See *State v. Oppedal, supra*; *State v. Hinkle*, 229 N.W.2d 744, 747 (Iowa 1975); 29 Am.Jur.2d, Evidence, § 721; 31A C.J.S. Evidence, § 412; 2 Jones on Evidence, § 8:7, at 175.

■ Also bearing in mind we are here concerned only with the victim's state of

mind, a validly asserted homicide-related accident defense may, under appropriate circumstances, open the door to admission of testimony disclosing decedent's fear of his or her assailant. See generally *United States v. Brown*, 160 U.S.App.D.C. 190, 490 F.2d 758, 767–773 (1973); Comment, "State of Mind: The Elusive Exception", 9 U.Calif. (Davis) L.Rev. 199, 219, n. 109 (1976). Admittedly, Fowler did voice such a defense. But, as later disclosed, it was inapplicable as a matter of law, therefore of no force or effect. In other words, Patricia's state of mind was not here in issue.

At this point a subsidiary question arises. Although, as heretofore noted, Patricia's state of mind was not primarily relevant, it must now be determined whether evidence regarding Fowler's prior assault upon Patricia was secondarily relevant to any other issues directly in the case. We are persuaded the answer to this query must be in the negative.

The fact that Patricia's state of mind, expressed four months before she was shot might, through a series of speculative inferences, be considered probative of defendant's intentions at the time of such expressions, cannot serve to make such expressions admissible under the aforesaid hearsay exception. By no stretch of imagination could the assault, followed by a vacuous time gap, be woven into a valid inference of intent or motive in relationship to the homicide which occurred four months later. Moreover, it would appear any conjectural homicide intention-related probative force which may have attended Patricia's remote expressions to attorney McCarthy were substantially outweighed by the inherent unfair prejudice, danger and confusion of the trial issues. See *United States v. Brown*, 490 F.2d at 764–775; *State v. Cassady*, 243 N.W.2d 581, 583 (Iowa 1976); *People v. Ireland*, 70 Cal.2d 522, 75 Cal.Rptr. 188, 191–194, 450 P.2d 580, 585–586 (1969); *People v. Purvis*, 56 Cal.2d 93, 13 Cal.Rptr. 801, 804, 362 P.2d 713, 716 (1961); 9 U.Calif. (Davis) L.Rev. at 230–231; cf. *State v. Coburn*, 244 N.W.2d 560, 562 (Iowa 1976).

Mindful of the foregoing, we now conclude trial court erroneously overruled defendant's hearsay objection to attorney McCarthy's testimony. Absent any showing to the contrary, prejudice is attendantly presumed which perforce dictates a reversal. See *State v. Menke*, 227 N.W.2d 184, 189 (Iowa 1975).

This court is also satisfied error in admitting the instantly involved hearsay unavoidably tainted the trial of both charges here involved. We accordingly reverse and remand for new trials.

By virtue of that holding we do not reach defendant's asserted error directed to denial of his right to rebut attorney McCarthy's testimony. See, however, *Solbrack v. Fosselman*, 204 N.W.2d 891, 895–896 (Iowa 1973); *State v. McCullough*, 226 N.W.2d 216, 217 (Iowa 1975); *State v. Willey*, 171 N.W.2d 301, 302–303 (Iowa 1969); 4 Jones on Evidence, § 24:1.

■ Parenthetically, the trial judge's reliance on our dead man statute (Code § 622.4) in support of his order sustaining the State's objection to defendant's attempted rebuttal is misplaced. Although this court has apparently never before been called upon to resolve the matter, we now hold the cited statute is ordinarily inapplicable to criminal prosecutions. See *Commonwealth v. DiCio*, 218 Pa.Super. 268, 275 A.2d 868, 870 (1971); 3 Jones on Evidence, § 20:24; 97 C.J.S. Witnesses § 133. See generally *Laing v. State Farm Fire & Cas. Co.*, 236 N.W.2d 317, 319–320 (Iowa 1975); M. Ladd, "Admission of Evidence Against Estates of Deceased Persons", 19 Iowa L.Rev. 521 (1934); 81 Am.Jur.2d, Witnesses, § 304; 97 C.J.S. Witnesses § 132b; cf. McCormick on Evidence, § 65, at 142.

III. Defendant further asserts he was erroneously subjected to impeachment-based cross-examination by the prosecutor regarding failure to voice his accident defense theory at time of or promptly after arrest.

In small part defendant relies on his trial court objection, and to a greater degree constitutional standards are invoked in sup-

port of a reversal. This two-pronged contention will be accordingly considered.

As aforesaid, two officers testimonially stated they arrived at the shooting scene, there observed defendant holding the deceased woman in his arms and when they approached Fowler he said, "I got mad and shot her". After arrest defendant was taken to the police station and there given the *Miranda* warnings.

On trial, in course of direct examination, Fowler denied making the above statement and further testified the shooting was accidental.

During the above noted cross-examination defense counsel interposed this objection alone: "Your honor, I would object. It goes far beyond my direct examination. There was nothing in my direct examination brought out to that effect (silence on arrest)."

■ We initially find no basis upon which to hold the discretion vested in trial court was abused by overruling the above stated objection. See *State v. Ivory*, 247 N.W.2d 198 (Iowa 1976); *State v. Carney*, 236 N.W.2d 44, 46 (Iowa 1975).

Following in order is defendant's constitutional approach, *supra.*

As argued by the State, defendant, by his trial court objection, failed to preserve error for review of the constitutionally based issue now raised on appeal.

■ Generally, an assignment of error first urged on appeal is not entertained. See *State v. Sparks*, 238 N.W.2d 777, 779 (Iowa 1976); *State v. Harmon*, 238 N.W.2d 139, 143 (Iowa 1976); *State v. Fields*, 223 N.W.2d 197, 198 (Iowa 1975); *State v. Coffee*, 182 N.W.2d 390, 393 (Iowa 1970).

■ And issues not raised in trial court, including constitutional questions, may not ordinarily be first asserted on appeal. See *State v. Montgomery*, 243 N.W.2d 596, 597 (Iowa 1976); *State v. Leonard*, 243 N.W.2d 75, 84 (Iowa 1976); *State v. Greene*, 226 N.W.2d 829, 832 (Iowa 1975); *State v. Ritchison*, 223 N.W.2d 207, 213 (Iowa 1974). See generally Sullins, "Preservation of Er-

ror: Providing a Basis for Appellate Review", 22 Drake L.Rev. 435 (1973).

■ Then too, objections made at trial cannot normally be amplified on appeal. See *State v. Lyles*, 225 N.W.2d 124, 125 (Iowa 1975); *State v. Guess*, 223 N.W.2d 214, 216 (Iowa 1974).

Finally, in light of the fact defendant failed to properly preserve at trial the constitutional contention he instantly voices as a basis for reversal, we elect not to review same. See *State v. Leonard, supra.* But see *State v. Rankin*, 181 N.W.2d 169, 171 (Iowa 1970); *State v. Wallace*, 261 Iowa 104, 152 N.W.2d 266, 269 (Iowa 1967).

However, by reason of possible recurrence of the problem on remand, with appropriate objection, trial court and counsel would be well advised to consider this statement in *Doyle v. Ohio,* 426 U.S. 610, 616, 96 S.Ct. 2240, 2244–2245, 49 L.Ed.2d 91 (1976):

"The State pleads necessity as justification for the prosecutor's action in these cases. It argues that the discrepancy between an exculpatory story at trial and silence at time of arrest gives rise to an inference that the story was fabricated somewhere along the way, perhaps to fit within the seams of the State's case as it was developed at pretrial hearings. Noting that the prosecution usually has little else with which to counter such an exculpatory story, the State seeks only the right to cross-examine a defendant as to post-arrest silence for the limited purpose of impeachment. In support of its position the State emphasizes the importance of cross-examination in general, see *Brown v. United States*, 356 U.S. 148, 154–155, 78 S.Ct. 622, 626–627, 2 L.Ed.2d 589 (1958), and relies upon those cases in which this Court has permitted use for impeachment purposes of post-arrest statements that were inadmissible as evidence of guilt because of an officer's failure to follow Miranda's dictates. *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); see also *Walder v. United States*,

347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). Thus, although the State does not suggest petitioners' silence could be used as evidence of guilt, it contends that the need to present to the jury all information relevant to the truth of petitioners' exculpatory story fully justifies the cross-examination that is at issue.

"Despite the importance of cross-examination, we have concluded that the Miranda decision compels rejection of the State's position. The warnings mandated by that case, as a prophylactic means of safeguarding Fifth Amendment rights, see *Michigan v. Tucker*, 417 U.S. 433, 443–444, 94 S.Ct. 2357, 2363–2364, 41 L.Ed.2d 182 (1974), require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. See *United States v. Hale*, 422 U.S. [171], at 177, 95 S.Ct. [2123], at 2137 [45 L.Ed.2d 99]. Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, *it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.* Mr. Justice White, concurring in the judgment in *United States v. Hale*, 422 U.S., at 182–183, 95 S.Ct., at 2139, put it very well:

"'. . . when a person under arrest is informed, as Miranda requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony. * * *.'" (emphasis supplied).

IV. This brings us to the matter of jury instructions.

Defendant primarily postulates he is entitled to a reversal because trial court refused to submit this defense requested instruction: "If you find that the shooting of Patricia Fowler was accidental on the part of the defendant, then you must find him not guilty."

Our review is confined to the "accident" element and does not in any sense encompass the propriety or aptitude of the request as made.

Fowler testified he pursued Patricia so as to talk with her about visitation privileges; after having pinned her to the ground she struggled and he leaned over to stomp her arms at which time Patricia struck defendant's arm causing the gun to discharge.

As best determinable, defendant neglected to voice any exception upon trial court's declination of the above quoted proposal. See *State v. Feddersen*, 230 N.W.2d 510, 516 (Iowa 1975); *State v. Baskin*, 220 N.W.2d 882, 886 (Iowa 1974).

Under these circumstances, the complaint here made would not ordinarily be accorded appellate review. It will be considered only because the same question may again appear on retrial.

Admittedly, there are fractionated thoughts on the subject. One school adheres to the view that a claim of accidental killing inheres in the general not guilty defense, thus is embraced in the jury charge dealing with elements of the offense and burden of proof. See *United States v. McIntire*, 461 F.2d 1092, 1093 (5th Cir. 1972); *State v. Baker*, 246 Iowa 215, 66 N.W.2d 303 (1954).

Notably, the *Baker* court said, 246 Iowa 231, 66 N.W.2d 312:

"In the court's instruction the jurors were told that before a verdict of guilty could be returned on the principal offense or any included offense, they must find that the evidence established beyond a reasonable doubt that defendant made the assault with specific intent to commit an unlawful assault. Had the court instructed on the claim of unintentional or accidental shooting, the instruction of the court would merely have been the converse of the instruction as given, that is, the court would have directed the jury that before the State would be entitled to a verdict of guilty it must have established by evidence beyond a reasonable doubt that the shooting was not unintentional or accidental. A court is not required to instruct both on the affirmative and the negative of a proposition. Certainly not, in the absence of such a request."

The situation is further complicated, however, by this rationale in State v. Trybom, 195 Iowa 780, 784, 192 N.W. 813, 814 (1923):

"Manifestly, the instructions on the subject of intent could not take the place of proper instructions on the defense of accidental killing. This defense is not, like self-defense, based upon justification or excuse, but is one that inheres in the very act charged, and negatives the alleged crime. The evidence of the defendant, if fully believed by the jury, entitled him to an acquittal. Notwithstanding this fact, the court ignored this issue altogether. With the reasonableness and weight of the evidence we have nothing to do: that is for the jury. It was, however, clearly error for the court, under the evidence, not to instruct the jury as to this defense. State v. Hartzell, 58 Iowa 520, 12 N.W. 557; State v. McCaskill, 160 Iowa 554. See, also, as bearing upon this question, State v. Ockij, 165 Iowa 237, 145 N.W. 486; State v. Matheson, 130 Iowa 440, 142 N.W. 445; State v. Matheson, 142 Iowa 414, 120 N.W. 1036; State v. Klute, 160 Iowa 170, 140 N.W. 864. The question requires no further discussion."

Unquestionably, Baker recognized Trybom, supra, but only with this terse statement, 246 Iowa at 232, 66 N.W.2d at 313:

"State v. Trybom, 195 Iowa 780–784, 192 N.W. 813, was a fratricide case in which defendant was convicted of second-degree murder. Defendant claimed the shotgun was accidentally discharged. A requested instruction on the issue was refused and the court gave none in its place. The judgment was reversed."

In brief, the line of demarcation, if any, so drawn between Baker and Trybom is difficult to perceive. We note, however, 41 C.J.S. Homicide § 387, accords with the Trybom holding. See also State v. Johnson, 221 Iowa 933, 941–942, 267 N.W. 698 (1936); State v. Friar, 204 Iowa 414, 415–416, 214 N.W. 596 (1927). See generally Mullaney v. Wilbur, 421 U.S. 684, 691–696, 95 S.Ct. 1881, 1886–1888, 44 L.Ed.2d 508 (1975); Stambaugh v. State, 30 Md.App. 707, 353 A.2d 638, 640–641 (1976); People v. Jones, 395 Mich. 379, 236 N.W.2d 461, 466–467 (1975).

Under the existent factual situation there is no need to now determine whether Baker or Trybom expresses the better reasoned concept. Rather, we are persuaded the lawful-unlawful approach is both apposite and dispositive.

This pronouncement in State v. Benham, 23 Iowa 154, 164 (1867), is still deemed viable:

"Accidental death, *wholly* to be excused from *all guilt*, must be caused in the doing of some *lawful act*.

" * * * If one in doing a lawful act, without any intention of bodily harm, and using proper precaution to prevent danger, unfortunately happens to kill another, the law excuses the killing." (emphasis in original).

As more fully expressed in 40 Am.Jur.2d, Homicide, § 112:

"Where it appears that a killing was unintentional, that the perpetrator acted with no wrongful purpose in doing the homicidal act, that it was done while he was engaged in a lawful enterprise, and that it was not the result of negligence,

the homicide will be excused on the score of accident or misadventure."

See also *Commonwealth v. Chermansky*, 430 Pa. 170, 242 A.2d 237, 241 (1968); Black's Law Dictionary, "Homicide per Infortunium, at 867 (rev. 4th ed. 1968).

■ It would exceed all bounds of reason to say Fowler was engaged in a lawful act at any time surrounding the killing of his former wife. The end result may have been accidental but defendant's preceding chase of Patricia, dragging her to the ground and then attempting to stomp on her arms were far removed from any indicia of a lawful act. See *Commonwealth v. Chermansky, supra*; 40 Am.Jur.2d, Homicide, § 112, at 407–408.

By way of exclusion it is to be understood we are not here concerned with and express no opinion as to homicide by motor vehicle.

Trial court correctly refused to submit an instruction on accidental death.

■ V. Another complaint registered by defendant fixes upon alleged failure by trial court to submit an instruction informing the jury regarding an asserted "provocation" defense.

Several witnesses testified an argument occurred between Fowler and Kamps immediately preceding any shooting. Fowler also testimonially stated that while he was seated in his car Kamps grabbed and struck him and tried to pull him out of the car, whereupon he "pulled the gun", then shot Kamps.

Trial court first refused to give an instruction on provocation.

After the jury had commenced deliberations, it forwarded to trial court this inquiry:

"Under Instruction Number 11 will you please clarify the clause 'if the act is not the result of sudden heat or passion'.

"Can you give us limits or guidelines, etc. to what constitutes 'sudden heat or passion'. Does anger fit into 'sudden heat or passion'."

A hearing ensued with counsel for the State, defendant and his attorney present.

See *Rogers v. United States*, 422 U.S. 35, ——, 95 S.Ct. 2091, 2094–2095, 45 L.Ed.2d 1 (1975). Thereafter trial court submitted to the jury a supplemental instruction comparable to Uniform Instruction 513.5.

The instant question is moot.

VI. The final issue before us relates to impeachment of a prosecution witness.

■ On cross-examination defense counsel asked Kamps whether he had ever struck any of the Fowler children and his response was in the negative. The next question was, in essence, if anyone testified to the contrary would he, Kamps, say they were not telling the truth and the witness replied "definitely".

When defense counsel attempted to present contradictory evidence trial court sustained the State's "side-issue" objection.

■ It is well settled the veracity of a witness may be generally placed in question by presentation of evidence revealing material facts are other than as stated by the testifying party. See *State v. Peterson*, 219 N.W.2d 665, 671 (Iowa 1974).

Even so, the above precept is circumscribed by this pronouncement in *State v. Hill*, 243 N.W.2d 567, 571 (Iowa 1976):

"It is well settled, however, the right to impeach by prior inconsistent statements is not without limit. The subject of the inconsistent statement, if it is to be admissible, must be material and not collateral to the facts of the case."

Defendant's attempt to so impeach Kamps went to a collateral matter. Phrased otherwise, the fact as to which error is predicated could not, over appropriate objection, have been shown in evidence for any purpose independent of the contradiction. See *State v. Oswalt*, 62 Wash.2d 118, 381 P.2d 617, 619 (1963); 1 Underhill's Criminal Evidence, § 239 (Herrick 5th ed. 1956); Black's Law Dictionary, "Collateral Facts", at 327 (rev. 4th ed. 1968).

REVERSED AND REMANDED FOR NEW TRIALS.